**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
**MARY E. BASS,**                          )
                                          )
              **Plaintiff,**               )
                                          )
         **v.**                            )    **Case No. 1:06-cv-01345-GK**
                                          )
**SHEILA C. BAIR,**                        )
**Chairman,**                              )
**Federal Deposit Insurance Corporation,** )
                                          )
              **Defendant.**               )
_____)

<u>**DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT**</u>

Defendant Sheila C. Bair, in her official capacity as Chairman of the Federal

Deposit Insurance Corporation, hereby moves pursuant to Rule 56 of the Federal Rules of

Civil Procedure for summary judgment as to Plaintiff's Complaint.[1]  The basis for this

motion, as more fully set forth in the accompanying Memorandum in Support of

Defendant's Second Motion for Summary Judgment, is that the undisputed record shows

that Plaintiff was not subjected to a hostile work environment based on either race or

retaliation.

In support of this motion, Defendant respectfully refers the Court to the attached

supporting memorandum, Defendant's Statement Of Material Facts As To Which There

---

[1] This is Defendant's second request for summary judgment.  Presently pending before
the Court is a motion for summary judgment filed by Defendant on December 20, 2006,
on the ground that the Complaint was not timely filed within the 90-day time period
statutorily required by 42 U.S.C. § 2000e-16(c).

Is No Genuine Issue, exhibits, and proposed order.

Respectfully submitted,

/s/ Barbara Sarshik
_____
Barbara Sarshik
D.C. Bar No. 943605
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (VS-E6012)
Arlington, VA 22226
(703) 562-2309
(703) 562-2482 (Fax)

William S. Jones
Georgia Bar No. 404288
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (VS-E6006)
Arlington, VA 22226
(703) 562-2362
(703) 562-2482 (Fax)

Attorneys for Defendant

Dated:  October 1, 2007

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ ) | | |
| **MARY E. BASS,** ) | | |
| ) | | |
| **Plaintiff,** ) | | |
| ) | | |
| **v.** ) | **Case No. 1:06-cv-01345-GK** | |
| ) | | |
| **SHEILA C. BAIR,** ) | | |
| **Chairman,** ) | | |
| **Federal Deposit Insurance Corporation,** ) | | |
| ) | | |
| **Defendant.** ) | | |
| _____) | | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT

BARBARA SARSHIK
Counsel, Legal Division
Federal Deposit Insurance
   Corporation
3501 N. Fairfax Drive (VS-E6012)
Arlington, VA 22226
Telephone: (703) 562-2309
Fax: (703) 562-2482

WILLIAM S. JONES
Counsel, Legal Division
Federal Deposit Insurance
   Corporation
3501 N. Fairfax Drive (VS-E6006)
Arlington, VA 22226
Telephone: (703) 562-2362
Fax: (703) 562-2482

Attorneys for Defendant

October 1, 2007

## TABLE OF CONTENTS

**PAGE**

**TABLE OF CONTENTS** ................................................................................. i

**TABLE OF AUTHORITIES** ........................................................................ ii

**TABLE OF EXHIBITS** .................................................................................v

**I.     INTRODUCTION**.................................................................................1

**II.    FACTUAL BACKGROUND**..................................................................2

      A.     The February 3, 2005 Incident........................................................3

      B.     Other Underlying Incidents Alleged by Plaintiff...........................5

**III.   APPLICABLE LEGAL STANDARDS** ...............................................7

      A.     Hostile Work Environment ..............................................................7

      B.     Summary Judgment..........................................................................8

**IV.    ARGUMENT**.........................................................................................9

      A.     Plaintiff was not subjected to a hostile work environment based
            on race...............................................................................................9

            1.     The alleged harassment was not severe or pervasive enough
                  to be a hostile work environment..................................................10

            2.     The alleged harassment was not connected to Plaintiff's race ......12

            3.     The alleged harassment did not alter the conditions of
                  Plaintiff's employment..................................................................14

      B.     Plaintiff was not subjected to a hostile work environment based
            on retaliation ..................................................................................15

      C.     Defendant is entitled to summary judgment even if Plaintiff has
            established a *prima facie* case of hostile work environment ....................18

**V.     CONCLUSION** ..................................................................................20

# TABLE OF AUTHORITIES

<u>CASES</u>                                                                                    <u>PAGE(S)</u>

*Akonji v. Unity Healthcare, Inc.,*
    No. 05-2101, 2007 WL 1207194 (D.D.C. Apr. 24, 2007)......................................10

*Alfano v. Costello,*
    294 F.3d 365 (2d Cir. 2002)...................................................................................12

*Anderson v. Liberty Lobby Inc,.*
    477 U.S. 242 (1986)................................................................................................9

*Baloch v. Norton,*
    No. 03-1207, 2007 WL 2774507 (D.D.C. Sept. 25, 2007)....................................10

*Barbour v. Browner,*
    181 F.3d 1342 (D.C. Cir. 1999) .............................................................................10

*Bell v. Gonzales,*
    398 F. Supp.2d 78 (D.D.C. 2005) ..........................................................................12

*Bryant v. Brownlee,*
    265 F. Supp.2d 52 (D.D.C. 2003) ..........................................................................12

*Bryant v. Leavitt,*
    475 F. Supp.2d 15 (D.D.C. 2007) ......................................................................8, 11

*Celotex Corp.v. Catrett,*
    477 U.S. 317 (1986)................................................................................................9

*Chaple v. Johnson,*
    453 F. Supp.2d 63 (D.D.C. 2006) ..........................................................................8

*Davis v. Ashcroft,*
    355 F. Supp.2d 330 (D.D.C. 2005) ........................................................................12

*Davis v. Coastal Int'l Sec. Inc.,*
    275 F.3d 1119 (D.C. Cir. 2002) .............................................................................8

*Everson v. Medlantic Healthcare Group,*
    414 F. Supp.2d 77 (D.D.C. 2006) ..........................................................................11

*\*Faragher v. Boca Raton,*
    524 U.S. 775 (1998).......................................................................................8, 10, 13

*George v. Leavitt*,
    407 F.3d 405 (D.C. Cir. 2005) ............................................................................10

*\*Harris v. Forklift Sys. Inc.*,
    510 U.S. 17 (1993) ...................................................................................7, 8

*Keeley v. Small*,
    391 F. Supp.2d 30 (D.D.C. 2005) .............................................................10, 11, 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ...................................................................................9

*Mayers v. Laborers' Health & Safety Fund of North Am.*,
    478 F.3d 364 (D.C. Cir. 2007) ..............................................................................17

*Mbulu v. Bureau of Nat'l Affairs*,
    No. 04-1540, 2006 WL 469971 (D.D.C. Feb. 28, 2006) ......................................11

*Meritor Sav. Bank, FSB v. Vinson*,
    477 U.S. 57 (1986) ...................................................................................7

*Neal v. Kelly*,
    963 F.2d 453 (D.C. Cir. 1992) ............................................................................9

*Nichols v. Truscott*,
    424 F. Supp.2d 124 (D.D.C. 2006) .....................................................................14

*Nurriddin v. Goldin*,
    382 F. Supp.2d 79 (D.D.C. 2005) .......................................................................12

*Rattigan v. Gonzales*,
    No. 04-2009, 2007 WL 1577855 (D.D.C. May 31, 2007) .....................................17

*Richard v. Bell Atlantic Corp.*,
    209 F. Supp.2d 23 (D.D.C. 2002) .......................................................................11

*Robinson v. Veneman*,
    No. 05-0358, 2006 WL 2474148 (D.D.C. Aug. 25, 2006) ...................................11

*Roof v. Howard Univ.*,
    No. 07-639, 2007 WL 2340882 (D.D.C. Aug. 17, 2007) .....................................10

*Santa Cruz v. Snow*,
    402 F. Supp.2d 113 (D.D.C. 2005) .....................................................................14

*Silver v. Leavitt*,
    No. 05-0968, 2006 WL 626928 (D.D.C. Mar. 13, 2006) .....................................11

iii

*Singh v. U.S. House of Representatives,*
     300 F. Supp.2d 48 (D.D.C. 2004) ........................................................................11

*Stewart v. Evans,*
     275 F.3d 1126 (D.C. Cir. 2002) ..........................................................................10


**STATUTES**

42 U.S.C. § 2000e ....................................................................................................1

42 U.S.C. § 2000e-16(c) ...........................................................................................2


**RULES and REGULATIONS**

Fed. R. Civ. P. 56 .....................................................................................................2

Fed. R. Civ. P. 56(e) .................................................................................................9


**MISCELLEOUS SOURCES**

J. K. Rowling*, Harry Potter and the Deathly Hallows,* 563
     *(*Arthur A. Levine Books, 1st ed. 2007*)* ...............................................13

*The American Heritage Dictionary of the English Language,*
     (Houghton Mifflin Co., 4th ed. 2004),
      http://dictionary.reference.com/browse/missy ...................................13

## TABLE OF EXHIBITS

1        Bass Declaration (May 10, 2005)

2        Bass Addendum to Affidavit (May 31, 2005)

3        Bass Deposition (May 30, 2007)

4        Bjorklund Deposition (July 24, 2007)

4-1     Bjorklund Deposition Errata Sheet

5        Formal Complaint of Discrimination (March 11, 2005)

6        Gambrell Declaration (September 19, 2007)

7        Harris Affidavit (July 8, 2005)

8        Harris Deposition (May 30, 2007)

8-1     Harris Deposition Errata Sheet

9        Steely Affidavit (June 27, 2005)

10       Steely Deposition (July 26, 2007)

10-1    Exhibit 1 to Steely Deposition (July 26, 2007)

10-2    Steely Deposition Errata Sheet

11       Woolford Declaration (September 24, 2007)

12       Woolford Deposition (July 24, 2007)

12-1    Woolford Deposition Errata Sheet

13       Order, *Bass v. Tanoue*, Case No. 1:00-cv-0115 (D.D.C. Feb. 10, 2003)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                       )
MARY E. BASS,                          )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )          Case No. 1:06-cv-01345-GK
                                       )
SHEILA C. BAIR,                        )
Chairman,                              )
Federal Deposit Insurance Corporation, )
                                       )
            Defendant.                 )
_____)

MEMORANDUM IN SUPPORT OF DEFENDANT'S SECOND
MOTION FOR SUMMARY JUDGMENT

I.      INTRODUCTION

Plaintiff Mary Elizabeth Bass, an African American woman, was employed by the

Federal Deposit Insurance Corporation ("FDIC") as a unit chief in the Acquisition

Services Branch of the Division of Administration at all times relevant to this lawsuit.

Plaintiff brings this action against Sheila C. Bair, in her official capacity as the Chairman

of the FDIC, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

("Title VII").

Plaintiff asserts that she was subjected to a hostile work environment based on

race (Complaint ("Compl.") Count 1 ¶¶ 13-14) and retaliation (Compl., Count 2 ¶¶ 15-

16).  The Complaint alleges a single discrete act in support of her hostile work

environment claims:  an occasion in February 2005 when Plaintiff was addressed as

"Missy" by a supervisor.  (Compl. ¶ 10.)  Although not mentioned in her Complaint,

Plaintiff has alleged that her hostile work environment claims include four other

1

occasions starting in August 2003 on which that supervisor made negative verbal comments to her.[1]

After discovery, however, the undisputed record shows that Plaintiff was not subjected to a hostile work environment based on either race or retaliation.  The alleged harassment consisted of only a few isolated instances of normal workplace stress that were neither severe nor pervasive enough to rise to the level of a hostile work environment.  Additionally, the alleged harassment was not remotely connected to either Plaintiff's race or her prior participation in protected EEO activities.  Finally, the alleged harassment did not alter the conditions of Plaintiff's employment.[2]

There is no genuine issue as to any material fact on either of Plaintiff's claims, as demonstrated below, and as demonstrated in the Rule 7.1(h) Statement of Undisputed Facts accompanying Defendant's Motion for Summary Judgment.  *See* Fed. R. Civ. P. 56.  Defendant therefore respectfully requests that judgment for Defendant be entered as a matter of law, and that this matter be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

Plaintiff Mary Elizabeth Bass, an African American woman, was employed by the FDIC in the Acquisition Services Branch ("ASB") of the Division of Administration as a Supervisory Contract Specialist at all relevant times.[3]  From February through September 2003, Plaintiff was the Chief of the Program Compliance Unit in ASB.  Beginning in

---

[1] Exhibit ("Exh.") 3 - Bass Dep. 17:19-22:21; Exh. 5 - Formal Complaint of Discrimination ¶ 3-4; Exh. 2 - Bass Addendum to Aff. ¶ 5.

[2] This is Defendant's second request for summary judgment.  Presently pending before the Court is a motion for summary judgment filed by Defendant on December 20, 2006, on the ground that the Complaint was not timely filed within the 90-day time period statutorily required by 42 U.S.C. § 2000e-16(c).  For the reasons set forth in that motion, judgment for Defendant on that ground would also be appropriate.

[3] Compl. ¶¶ 4, 7.

2

October 2003, Plaintiff was the Chief of the Divisional Contracting Unit in ASB. Plaintiff had been promoted to a supervisory grade 14 position in February 2003 when she became Chief of the Program Compliance Unit, and her position was converted to a CM-1 in April 2004 as part of a larger reorganization.[4]

Plaintiff's second-level supervisor was Ann Bridges Steely, the Associate Director of ASB, beginning in May 2003 when Ms. Steely started at the FDIC.[5] Beginning in October 2003 when Plaintiff became Chief of the Divisional Contracting Unit, her first-level supervisor was Tom Harris, Assistant Director of ASB.[6] ASB's primary responsibility was to support other divisions of the FDIC in effectuating procurement contracts.[7] The Divisional Contracting Unit, for which Plaintiff became the Chief starting in October 2003, was directly responsible for providing this contractual support to specific divisions of the FDIC.[8]

**A.    The February 3, 2005 Incident**

After Plaintiff began running the Divisional Contracting Unit in October 2003, Ms. Steely heard repeated complaints about poor customer service being provided by Plaintiff's unit.[9] On February 1, 2005, Ms. Steely received yet another complaint expressing considerable frustration with the delays in Plaintiff's unit from Andrea Woolford, an Assistant Director in one of the divisions supported by Plaintiff's unit. In

---

[4] Compl. ¶ 7; Exh. 3 - Bass Dep. 10:15-21, 11:7-15, 15:9-14. Under the FDIC's pay system, "CM" which stands for "Corporate Manager," is a designation given to supervisory and managerial positions. It is equivalent to the SES (Senior Executive Service) designation more generally used by federal agencies.

[5] Exh. 10 - Steely Dep. 6:7-15.

[6] Exh. 7 - Harris Aff. 2; Exh. 1 - Bass Decl. 1.

[7] Exh. 10 - Steely Dep. 7:9-14.

[8] Exh. 10 - Steely Dep. 13:20-14:2; Exh. 8 - Harris Dep. 39:2-13.

[9] Exh. 9 - Steely Aff. 3; Exh. 10 - Steely Dep. 63:20-64:11, 65:3-13; Exh. 12 - Woolford Dep. 46:11-47:2, 49:5-13; Exh. 11 - Woolford Decl. ¶ 3; Exh. 6 - Gambrell Decl. ¶ 4.

response, Ms. Steely arranged to meet with Plaintiff and Plaintiff's first-level supervisor, Tom Harris, on February 3, 2005.[10]  At that meeting, Ms. Steely informed Plaintiff about Ms. Woolford's complaint, and engaged Plaintiff in a discussion of steps that Plaintiff needed to take to improve her unit's performance.[11]

As the meeting ended, Ms. Steely gave a work-related direction to Plaintiff which she ended by addressing Plaintiff as "Missy."[12]  On several previous occasions, Ms. Steely had heard Plaintiff addressing other managers at the FDIC using terms of endearment such as "Sweetie."  Ms. Steely believed that these terms of endearment were inappropriate, unprofessional, and demeaning to women.  Accordingly, Ms. Steely had spoken with Plaintiff privately on several occasions and asked Plaintiff to stop using these terms of endearment, particularly since Ms. Steely was trying to enhance the professionalism of her branch.[13]

Ignoring Ms. Steely's repeated admonitions, Plaintiff had continued to use inappropriate terms of endearment in work-related meetings.  Only a few days before the February 3, 2005 meeting, Plaintiff attended a business meeting with several other senior officials of the FDIC, including Donna Gambrell, the Deputy Director of another division supported by Plaintiff's unit.[14]  At the start of that earlier meeting, Plaintiff addressed

---

[10] Exh. 10-1 - Exh. 1 to Steely Dep. 44-45; Exh. 10 - Steely Dep. 66:17-22; Exh. 9 - Steely Aff. 3; Exh. 11 - Woolford Decl.¶ 3.

[11] Exh. 10 - Steely Dep. 67:11-20; Exh. 9 - Steely Aff. 3; Exh. 10-1 - Exh. 1 to Steely Dep. 1, 49-51; Exh. 7 - Harris Aff. 2-3.

[12] Exh. 10-1 - Exh. 1 to Steely Dep. 49; Exh. 10 - Steely Dep. 67:20-21; Exh. 9 - Steely Aff. 3; Exh. 7 - Harris Aff. 3.

[13] Exh. 10 - Steely Dep. 75:21-76:2, 77:12-21; 78:13-16; Exh. 9 - Steely Aff. 5-6; Exh. 7 - Harris Aff. 3-4; Exh. 3 - Bass Dep. 110:16-20.

[14] Exh. 10 - Steely Dep. 75:21-76:2; Exh. 1 - Bass Decl. 5.

4

Ms. Gambrell as "Sweetie."[15]  Upon hearing this and realizing that Plaintiff had ignored her repeated admonitions, Ms. Steely decided that Plaintiff might better understand why she should not use terms of endearment at work if she experienced being spoken to in an unprofessional manner.  Accordingly, Ms. Steely addressed Plaintiff as "Missy" a few days later, at the end of the February 3, 2005 meeting.[16]

A few minutes after the February 3, 2005 meeting, Ms. Steely visited Plaintiff's office intending to discuss Plaintiff's continued use of terms of endearment at work. Hoping to trigger an understanding on Plaintiff's part about how others felt being addressed in an unprofessional manner, Ms. Steely asked Plaintiff how she had felt being called "Missy."  Ms. Steely attempted to remind Plaintiff that it was Plaintiff's responsibility as a manager to set a professional tone in the office and not to address others in a way that could be perceived as disrespectful.  At that point, Plaintiff became upset and Ms. Steely left her office.[17]

**B.    Other Underlying Incidents Alleged by Plaintiff**

Plaintiff's hostile work environment claims are also based on four other verbal comments allegedly made to her by Ms. Steely in the 18 months preceding the

---

[15] Although Plaintiff has characterized that Deputy Director as a personal friend (Exh. 5 - Formal Complaint of Discrimination ¶ 4; Exh. 1 - Bass Decl. 5; Exh. 3 - Bass Dep. 62:20, 102:18-20), the undisputed record shows that there was no such friendship.  By Plaintiff's own admission, she and the Deputy Director never had lunch, socialized outside of work, or engaged in any conversation that was not related to work.  (Exh. 3 - Bass Dep.105:6-106:16; Exh. 6 - Gambrell Decl. ¶ 3.)

[16] Exh. 10 - Steely Dep. 75:21-77:1; Exh. 9 - Steely Aff. 3; Exh. 10-1 - Exh. 1 to Steely Dep. 1, 49-50; Exh. 4 - Bjorklund Dep. 50:11-52:17; Exh. 8 - Harris Dep. 105:14-107:16.

[17] Exh. 10 - Steely Dep. 68:21-69:12; Exh. 9 - Steely Aff. 4-5; Exh. 10-1 - Exh. 1 to Steely Dep. 1, 50-51.

February 3, 2005 meeting.[18]  The first comment was allegedly made by Ms. Steely in August 2003 at a meeting of ASB managers to discuss an upcoming reorganization. According to Plaintiff, Ms. Steely told her, "I don't need your negativity" during the meeting.[19] Plaintiff has no reason to believe that this remark was motivated by racial or retaliatory animus.[20]

The second comment was made in October 2003 after Ms. Steely heard that Plaintiff had criticized Ms. Steely to other ASB employees.  Ms. Steely called Plaintiff into a private meeting that lasted no more than five minutes to express her concern about Plaintiff's criticisms.[21]  Plaintiff has no reason to believe that Ms. Steely's comment was motivated by racial or retaliatory animus.[22]

The third comment was made in November or December 2003 in response to concerns that other managers had expressed to Ms. Steely about whether Plaintiff would disclose confidential information.  At the time, ASB managers planned to hold meetings about the FDIC's pay-for-performance program, at which they would exchange highly confidential information about the performance of individual employees.  Other managers told Ms. Steely that they believed that Plaintiff would leak this confidential information to other employees.  In response, Ms. Steely held a short private meeting with Plaintiff at which she explained this concern to Plaintiff.[23]

---

[18] Exh. 3 - Bass Dep. 17:19-22:21; Exh. 5 - Formal Complaint of Discrimination ¶ 3-4; Exh. 2 - Bass Addendum to Aff. ¶ 5.
[19] Exh. 3 - Bass Dep. 18:7-10; Exh. 2 - Bass Addendum to Aff. ¶ 5a.
[20] Exh. 3 - Bass Dep. 25:17-26:3.
[21] Exh. 9 - Steely Aff. 8; Exh. 10 - Steely Dep. 87:9-89-1; Exh. 2 - Bass Addendum to Aff. ¶ 5b; Exh. 3 - Bass Dep. 19:2-9.
[22] Exh. 3 - Bass Dep. 26:13-21.
[23] Exh. 3 - Bass Dep. 20:1-21:5; Exh. 2 - Bass Addendum to Aff. ¶ 4; Exh. 1 - Bass Decl. 9.

The fourth comment was made in August 2004 after Ms. Steely heard that Plaintiff had been circulating unfounded rumors about her.  Specifically, Ms. Steely heard that Plaintiff had incorrectly told others that Ms. Steely, who had worked for most of her career at the Department of Defense, had been responsible for having an ASB employee placed on active military duty.  At a private meeting with Plaintiff that lasted no more than five minutes, Ms. Steely denied the rumors and asked Plaintiff to stop spreading them.[24]

### III.    APPLICABLE LEGAL STANDARDS

**A.    Hostile Work Environment**

Title VII forbids "discriminatory conduct [that is] so severe or pervasive that it create[s] a work environment abusive to employees because of their race, gender, religion, or national origin . . . ." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 22 (1993).  "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris,* 510 U.S. at 21 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986) (internal citations omitted)).  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Harris,* 510 U.S. at 21.

---

[24] Exh. 3 - Bass Dep. 21:21-22, 22, 32:16-19, 33:4-11; Exh. 2 - Bass Addendum to Aff. ¶ 5-6.

To be a hostile work environment, "conduct must be so extreme as to amount to a change in the terms and conditions of employment." *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998). The standards for judging a hostile work environment:

> are sufficiently demanding to ensure that Title VII does not become a "general civility code." Properly applied, they will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."

*Faragher,* 524 U.S. at 788 (internal citations omitted).

All of the facts and circumstances must be considered in determining whether an environment is hostile. These include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher,* 524 U.S. at 787-788 (quoting *Harris*, 510 U.S. at 23). Additionally, it must be clear that the hostile work environment was the result of discrimination based on a protected status. *Chaple v. Johnson,* 453 F. Supp.2d 63 (D.D.C. 2006).

To establish a *prima facie* case of a hostile work environment, a plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment occurred because of her membership in the protected class; (4) the alleged harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment but failed to take any action to prevent it. *Davis v. Coastal Int'l Sec. Inc.,* 275 F.3d 1119, 1122-23 (D.C. Cir. 2002); *Bryant v. Leavitt,* 475 F. Supp.2d 15, 28 (D.D.C. 2007) (Kessler, J.).

**B.    Summary Judgment**

Summary judgment should be granted if the pleadings on file, together with the affidavits and other admissible evidence of record, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine issue of material fact is one capable of affecting the outcome of the litigation that is supported by admissible evidence sufficient for a reasonable trier of fact to find in favor of the non-moving party. *Anderson,* 477 U.S. at 247-248.

The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The party opposing summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248. The non-moving party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Moreover, any factual assertions in the movant's affidavits will be accepted as being true unless the opposing party submits her own affidavits or other documentary evidence contradicting the assertion. *Neal v. Kelly,* 963 F.2d 453, 456 (D.C. Cir. 1992).

## IV.    ARGUMENT

### A.    Plaintiff was not subjected to a hostile work environment based on race.

Plaintiff's race-based hostile work environment claim fails for three reasons. First, the alleged harassment was not severe or pervasive enough to be a hostile work environment. Second, the alleged harassment was not connected to Plaintiff's race. Third, the alleged harassment did not alter the conditions of Plaintiff's employment. Any one of these reasons is sufficient to demonstrate that Plaintiff was not subjected to a race-based hostile work environment.

9

**1.    The alleged harassment was not severe or pervasive enough to be a hostile work environment.**

Plaintiff's case is based on five occasions during an 18-month period when she was criticized by her supervisor for work-related reasons. These thinly scattered instances are exactly the sporadic and isolated conduct that, by its very infrequency, falls short of a hostile work environment.

Under established Supreme Court decisional law, "the sporadic use of abusive language" does not constitute a hostile work environment. *Faragher,* 524 U.S. at 788 (citations omitted). "Even a few isolated incidents of offensive conduct do not amount to actionable harassment." *Stewart v. Evans,* 275 F.3d 1126, 1134 (D.C. Cir. 2002). Consistent with these principles, the D.C. Circuit and this Court have consistently held that there is no hostile work environment where the alleged hostile incidents occurred only sporadically.[25] For example, this Court recently held that there was no hostile work environment where – as in the present case – five alleged hostile incidents occurred over an 18-month period. *Akonji v. Unity Healthcare, Inc.*, No. 05-2101, 2007 WL 1207194, at *10-*11 (D.D.C. Apr. 24, 2007) (granting summary judgment in favor of defendant).

---

[25] *See, e.g., George v. Leavitt,* 407 F.3d 405, 416-17 (D.C. Cir. 2005) (no hostile work environment where employee had several confrontations with co-workers, was told three times to "go back to Trinidad" or to "go back where she came from," and alleged that she was not given the type of work she deserved); *Barbour v. Browner,* 181 F.3d 1342, 1348 (D.C. Cir. 1999) (no hostile work environment where there were two incidents over a two year period); *Baloch v. Norton,* No. 03-1207, 2007 WL 2774507, at *17 (D.D.C. Sept. 25, 2007) (no hostile work environment where there were four instances of "heated shouting" over a nine-month period); *Keeley v. Small,* 391 F. Supp.2d at 51 (D.D.C. 2005) (no hostile work environment where verbal insults were directed at plaintiff by his supervisor on two or three occasions); *Roof v. Howard Univ.*, No. 07-639, 2007 WL 2340882 (D.D.C. Aug. 17, 2007) (no hostile work environment where there were seven emails over a 15-month period).

Based on this consistent case law, Defendant is entitled to summary judgment because the alleged harassment occurred too sporadically to be a hostile work environment.

Nor was the alleged harassment severe enough to constitute a hostile work environment.  In a recent case, this Court stated:

> Here, Plaintiff has offered evidence that he was subject to harassment when [his supervisor] reprimanded and criticized him, made unwelcome comments about his age, and singled him out for close scrutiny by management. These discrete acts of alleged discrimination and retaliation simply do not rise to the level of severity and pervasiveness necessary to maintain a hostile work environment claim.

*Bryant*, 475 F. Supp.2d at 28 (Kessler, J.).  Similarly, this Court has repeatedly held that there is no hostile work environment where a plaintiff's case is based upon criticisms of a subordinate's work.[26]

Based on this case law, it is clear that Plaintiff was not subjected to a hostile work environment.  Plaintiff's case is based entirely upon a few criticisms from her supervisor. There is no evidence that Plaintiff was ever threatened, intimidated, degraded, subordinated, or abused.[27]  To the contrary, the criticism of Plaintiff was brief and, where

---

[26] *See Singh v. U.S. House of Representatives,* 300 F. Supp.2d 48, 56 (D.D.C. 2004) ("criticisms of a subordinate's work and expressions of disapproval (even loud expressions of disapproval)"); *Robinson v. Veneman,* No. 05-0358, 2006 WL 2474148, at *3 (D.D.C. Aug. 25, 2006) ("a few disagreements with supervisors"); *Richard v. Bell Atlantic Corp.,* 209 F. Supp.2d 23, 35 (D.D.C. 2002) ("rude comments, unjust criticism, and stressful working conditions"); *Everson v. Medlantic Healthcare Group,* 414 F. Supp.2d 77, 86 (D.D.C. 2006) ("reprimands and unpleasant bosses"); *Mbulu v. Bureau of Nat'l Affairs,* No. 04-1540, 2006 WL 469971, at *13 (D.D.C. Feb. 28, 2006) ("aggressive supervision"); *Keeley v. Small,* 391 F. Supp.2d at 51 ("verbal insults directed at plaintiff by his supervisor").

[27] *See Silver v. Leavitt,* No. 05-0968, 2006 WL 626928, at *12 (D.D.C. Mar. 13, 2006) (no hostile work environment in the absence of an allegation that the defendant "ever threatened plaintiff, or intimidated, degraded, subordinated, or abused plaintiff").

possible, private.  It was given quietly and dispassionately, and was aimed at improving

Plaintiff's performance.

This case presents a classic illustration of a principle recently declared by this

Court:  "Occasional instances of less favorable treatment involving ordinary daily

workplace decisions are not sufficient to establish a hostile work environment."  *Bell v.*

*Gonzales,* 398 F. Supp.2d 78, 92 (D.D.C. 2005).  The occasional instances involved in

this case simply do not rise to the level of severity and pervasiveness needed to constitute

a hostile work environment.

> **2.      The alleged harassment was not connected to Plaintiff's race.**

For a hostile work environment claim to succeed, it must be clear that the hostile

work environment was the result of discrimination based on a protected status.  As this

Court has agreed:

> Everyone can be characterized by sex, race, ethnicity, or
> (real or perceived) disability; and many bosses are harsh,
> unjust, and rude.  It is therefore important in hostile work
> environment cases to exclude from consideration personnel
> decisions that lack a linkage of correlation to the claimed
> ground of discrimination.  Otherwise, the federal courts
> will become a court of personnel appeals.

*Alfano v. Costello,* 294 F.3d 365, 377 (2d Cir. 2002).[28]

Here, Plaintiff's claim must fail because the incidents of which Plaintiff

complains are lacking in any evidence of racial animus.  The first four incidents do not

bear even the slightest trace of reference to race.  Even Plaintiff has admitted that she has

---

[28] This language in *Alfano* has frequently been cited with approval by this Court. *See, e.g., Nurriddin v. Goldin,* 382 F. Supp.2d 79, 107-08 (D.D.C. 2005); *Davis v. Ashcroft,* 355 F. Supp.2d 330, 346 (D.D.C. 2005); *Bryant v. Brownlee,* 265 F. Supp.2d 52, 63 (D.D.C. 2003).

no reason to believe that Ms. Steely's remarks in the first two incidents were motivated by racial animus.[29]

Nor is the fifth incident, consisting of the Plaintiff being called "Missy," connected to Plaintiff's race. Although Plaintiff asserts that "Missy" is a racial epithet, her subjective belief is not enough to support her hostile work environment claim.[30] A workplace must also be objectively hostile; that is, it must be "one that a reasonable person would find abusive or hostile . . . ." *Faragher,* 524 U.S. at 787.

Here, nothing suggests that a reasonable person would find the word "Missy" to be racially abusive. The word "Missy" has an established definition that refers to gender, but not at all to race.[31] Popular culture, too, abounds with the use of "Missy" in a sense that has no racial connotation.[32]

This racially neutral understanding of "Missy" is supported by the two senior, African American officials at the FDIC who had significant interactions with Plaintiff in the facts underlying this case.[33] Both of them are unaware of any racially derogatory

---

[29] Exh. 3 - Bass Dep. 25:17-26:3, 26:13-21.

[30] The only basis provided by Plaintiff for her subjective belief that "Missy" is a racial slur is that she was told that it was a racial slur by her sister at some unspecified point during Plaintiff's childhood. (Exh. 3 - Bass Dep. 71:14-72:18.)

[31] One dictionary defines "Missy" as "a familiar term of address for a young woman or girl." *The American Heritage® Dictionary of the English Language,* (Houghton Mifflin Co., 4th ed. 2004), http://dictionary.reference.com/browse/missy.

[32] Most recently, the newest Harry Potter book contains an incident in which Harry's friend, Hermione Granger, is addressed as "missy" when she is chided for reading a particular journalist's news reports: "Yes," said Aberforth tersely. "Been reading Rita Skeeter, have you, missy?" J. K. Rowling, *Harry Potter and the Deathly Hallows,* 563 (Arthur A. Levine Books, 1st ed. 2007).

[33] Andrea Woolford is the official whose complaints to Ann Bridges Steely about Plaintiff's performance on February 1, 2005 led to the February 3, 2005 meeting. Donna Gambrell is the senior official who was called "Sweetie" by Plaintiff at a meeting a few days before that February 3, 2005 meeting.

meaning associated with the word "Missy," and both have customarily heard or used the word in a racially neutral manner.[34]

Even if the word "Missy" could conceivably be considered to have a racial overtone, Plaintiff's claim would still fail because that overtone would exist in only one of five alleged incidents of harassment.  *Santa Cruz v. Snow*, 402 F. Supp.2d 113, 129 (D.D.C. 2005) (no hostile work environment where only two of numerous alleged incidents "bear even the slightest trace of reference to race").[35]

In sum, Plaintiff has failed to establish any relationship between the alleged harassment and racial animus.  She simply has not produced evidence that she was discriminated against based on her race.  To the contrary, the alleged harassment appears quite clearly to have arisen from job-related professional conflicts between Plaintiff and a supervisor.[36]  Accordingly, Plaintiff's claim of a racially hostile work environment cannot survive the FDIC's motion for summary judgment.

### 3.    The alleged harassment did not alter the conditions of Plaintiff's employment.

There is no evidence that the alleged harassment altered the conditions of Plaintiff's employment.  Plaintiff does not claim to have suffered a loss of pay or benefits as a result of the alleged harassment, and in fact does not allege that she suffered any monetary loss.  Nothing suggests that Plaintiff's performance was negatively affected by

---

[34] Exh. 6 - Gambrell Decl. ¶ 5; Exh. 11 - Woolford Decl. ¶ 4.

[35] *See also Nichols v. Truscott,* 424 F. Supp.2d 124, 140 (D.D.C. 2006) (no hostile work environment where "[o]nly a handful of the comments (and none of the conduct) by plaintiff's co-workers could have been even remotely linked to plaintiff's membership in a protected class," including three statements referring to plaintiff as a "bitch").

[36] *See Nichols,* 424 F. Supp.2d at 140 (no hostile work environment where alleged harassment arose from personal conflicts between the plaintiff and her co-workers and supervisors, rather than from any racially or sexually discriminatory animus).

the alleged harassment, particularly because there were already many indications of

performance problems on Plaintiff's part as shown by the complaints that Ms. Steely had

received from other FDIC officials before the February 3, 2005 meeting.  There is no

evidence that Plaintiff suffered any emotional distress, other than her own unsupported

testimony.[37]

In sum, the alleged harassment lacks any of the indicia of a hostile work

environment.  It was not severe or pervasive, reflecting nothing more than the ordinary

tribulations of the workplace; it was not connected to any racial animus; and it did not

alter the conditions of Plaintiff's employment.  Accordingly, Plaintiff was not subjected

to a hostile work environment based on race.

**B.      Plaintiff was not subjected to a hostile work environment based on
retaliation.**

Plaintiff's retaliation-based hostile work environment claim fails for three

reasons.  First, the alleged harassment was not severe or pervasive enough to be a hostile

work environment.  Second, the alleged harassment was not connected to Plaintiff's

previous protected activity.  Third, the alleged harassment did not alter the conditions of

Plaintiff's employment.  As with Plaintiff's race-based hostile work environment claim,

any one of these reasons is sufficient to demonstrate that Plaintiff was not subjected to a

retaliation-based hostile work environment.

---

[37] Although Plaintiff alleges that she suffered emotional distress that affected her well
being as a result of being called "Missy" on February 3, 2005, her emotional distress was
not severe enough to require medical attention.  In the several months following the
February 3, 2005 meeting, Plaintiff visited her doctor's office for only two reasons:  (1)
in April or May 2005, Plaintiff sought treatment for an upper respiratory problem that she
has described as flu or strep throat; and (2) Plaintiff visited her doctor's office on a few
occasions to have her medical prescription filled for high blood pressure, a chronic
condition for which Plaintiff has been treated for more than 20 years. (Exh. 3 - Bass Dep.
82:15-22, 84:17-85:8, 86:9-16, 87:4-20, 88:3-20.)

The first and third reasons have already been discussed fully above in connection with Plaintiff's race-based hostile work environment claim.  *See* Sections IV.A.1 at 10-12 and IV.A.3 at 14-15 above.  As to the second reason, none of the alleged incidents gives rise to an inference of retaliation because they were not connected to Plaintiff's previous protected activity.

This previous activity consisted of a prior Title VII lawsuit against the FDIC that had ended in February 2003.[38]  Ms. Steely had no involvement with the previous lawsuit or underlying events, and did not join the FDIC until May 2003, three months after the lawsuit's conclusion.  Ms. Steely did not even know about the lawsuit until October 2003.  At that time, Ms. Steely learned about the lawsuit only because Plaintiff gratuitously gave Ms. Steely some documents related to the lawsuit.  Even then Ms. Steely did not read those documents because she wanted to focus her efforts on moving forward positively, rather than dwelling on the past.[39]

---

[38] Following a jury verdict in Plaintiff's favor in 2001, the FDIC appealed; the parties entered into a settlement agreement; and the case was dismissed with prejudice in February 2003.  *See* Exh. 13 - Order of February 10, 2003, *Bass v. Tanoue*, Case No. 1:00-cv-0115 (D.D.C. Feb. 10, 2003).

[39] Exh. 9 - Steely Aff. 2; Exh. 10 - Steely Dep. 42:12-43:20; Exh. 10-1 - Exh. 1 to Steely Dep. 15-37; Exh. 4 - Bjorklund Dep. 52:20-54:1.  Nothing supports Plaintiff's statement that Ms. Steely told her that she (Ms. Steely) had learned about the lawsuit before joining the FDIC.  To the contrary, Ms. Steely has testified in her affidavit that she was never told about it.  (Exh. 9 - Steely Aff. 2.)  Ms. Steely's testimony is corroborated by the testimony of Glenn Bjorklund, the Deputy Director of the Division of Administration and Ms. Steely's first-level supervisor.  Mr. Bjorklund interviewed Ms. Steely before she was hired, and he testified that she was never informed about Plaintiff's previous lawsuit. (Exh. 4 - Bjorklund Dep. 52:20-54:1.)  Moreover, even if Ms. Steely knew about Plaintiff's lawsuit before joining the FDIC, Plaintiff's claim fails for the other reasons stated in this memorandum.

Plaintiff cites no evidence to suggest that any of the alleged incidents of harassment were in response to her previous lawsuit.  Ms. Steely's comments to Plaintiff were unrelated to Plaintiff's protected activity.[40]  At most, they reflect a supervisor's efforts to improve a subordinate's performance.

Timing, too, strongly suggests that the alleged harassment was not prompted by Plaintiff's previous protected activity.  Plaintiff's lawsuit concluded long before the incidents underlying her current claim:  six months before the earliest incident, and two years before the last incident.[41]  This is far too long a period of time to give rise to an inference of causal connection.[42]  In addition, the first incident occurred in August 2003, before Ms. Steely even knew about Plaintiff's previous protected activity.  Thus, that first incident could not possibly have been the result of retaliation.

In sum, Plaintiff has failed to establish any relationship between the alleged harassment and any retaliatory animus.  Additionally, the alleged harassment was not severe or pervasive, and it did not alter the conditions of Plaintiff's employment.  Accordingly, Plaintiff was not subjected to a hostile work environment based on retaliation.

---

[40] *See Keeley*, 391 F. Supp.2d at 51 (holding that there was no retaliation-based hostile work environment where the "verbal insults directed at plaintiff by his supervisors were unrelated to plaintiff's protected activity and, moreover, only occurred on a few occasions.").

[41] Plaintiff's previous lawsuit ended in February 2003.  The five incidents underlying Plaintiff's hostile work environment claims occurred in (1) August 2003, (2) October 2003, (3) November or December 2003, (4) August 2004, and (5) February 2005.

[42] *See Mayers v. Laborers' Health & Safety Fund of North Am.,* 478 F.3d 364, 369 (D.C. Cir. 2007) (holding that eight- or nine-month gap is "far too long"); *Rattigan v. Gonzales,* No. 04-2009, 2007 WL 1577855, at *16 (D.D.C. May 31, 2007) ("This Court has often followed a three-month rule to establish causation on the basis of temporal proximity alone.").

**C.    Defendant is entitled to summary judgment even if Plaintiff has established a *prima facie* case of hostile work environment.**

Even if Plaintiff were somehow considered to have established a *prima facie* case of a hostile work environment, Defendant would still be entitled to summary judgment. For each of the incidents underlying Plaintiff's claims, Defendant has articulated legitimate, nondiscriminatory reasons for its conduct and Plaintiff has not presented any evidence that would raise a genuine issue of material fact as to whether Defendant's legitimate, nondiscriminatory reasons are a pretext for discrimination.  Thus:

- Incident 1.  Comment allegedly made by Ms. Steely to Plaintiff to the effect of "I don't need your negativity" in August 2003 at a meeting of ASB managers to discuss an upcoming reorganization.

A supervisor's interest in effectuating a reorganization is a legitimate, nondiscriminatory reason to ask a subordinate manager to stop being negative about the reorganization.

- Incident 2.  Comment made by Ms. Steely to Plaintiff in October 2003 asking Plaintiff to stop criticizing her behind her back to other subordinate employees.

A supervisor's interest in promoting workplace harmony is a legitimate, nondiscriminatory reason to ask a subordinate manager to refrain from criticizing the supervisor behind her back to other employees.

- Incident 3.  Comment made by Ms. Steely to Plaintiff in November or December 2003 expressing concern about whether Plaintiff would leak highly confidential information to other employees.

The Defendant's interest in encouraging managers to exchange confidential information about employees, as part of a pay-for-performance program, coupled with the concern expressed by other managers to Ms. Steely that Plaintiff might leak this

confidential information, is a legitimate, nondiscriminatory reason for Ms. Steely to ask

Plaintiff to maintain the confidentiality of this information.

- Incident 4. Comment made by Ms. Steely to Plaintiff in August 2004 regarding rumors that Plaintiff had been circulating among employees concerning Ms. Steely's purported role in having an employee placed on active military duty.

A supervisor's interest in promoting respect for management is a legitimate,

nondiscriminatory reason to ask a subordinate manager to stop spreading baseless rumors

around the workplace.

- Incident 5. A single reference to Plaintiff by Ms. Steely as "Missy" during a meeting on February 3, 2005.

As part of her efforts to promote professionalism in her branch, Ms. Steely had

attempted unsuccessfully, through polite requests and admonitions, to stop Plaintiff from

addressing senior FDIC managers and other colleagues with inappropriate terms of

endearment. Ms. Steely thought that Plaintiff might better understand why she should

not do this if she were addressed in an unprofessional manner. This is a legitimate,

nondiscriminatory reason for calling Plaintiff "Missy" on one occasion.

Defendant has articulated legitimate, nondiscriminatory reasons for each of the

incidents underlying Plaintiff's hostile work environment claims. Plaintiff is unable to

present any evidence that would create a genuine issue of material fact as to whether

these legitimate, nondiscriminatory reasons are a pretext for discrimination. Indeed,

Plaintiff has testified that she has no reason to believe that the first two incidents were

motivated by racial or retaliatory animus.[43] Accordingly, Defendant is entitled to

---

[43] Exh. 3 - Bass Dep. 25:17-26:3; 26:13-21.

summary judgment even if Plaintiff is somehow considered to have established a *prima facie* case of hostile work environment based on either race or retaliation.

## V.     CONCLUSION

On a few occasions over a period of 18 months, Plaintiff's supervisor allegedly made negative comments about a few specific aspects of her performance.  These isolated, thinly scattered incidents reflect ordinary tribulations of the workplace.  They were neither severe nor pervasive enough to state a claim for a hostile work environment.  Additionally, the alleged harassment was not connected to Plaintiff's race or prior participation in protected activities.  Furthermore, the alleged harassment did not alter the conditions of Plaintiff's employment.

Even if Plaintiff were considered to have established a *prima facie* case of hostile work environment, Defendant is still entitled to summary judgment because Defendant has articulated legitimate, nondiscriminatory reasons for its conduct and Plaintiff has not presented any evidence that would raise a genuine issue of material fact as to whether these reasons are a pretext for discrimination.

Accordingly, Plaintiff was not subjected to a hostile work environment based on

race or retaliation, and Defendant is entitled to summary judgment.

Respectfully submitted,

/s/ Barbara Sarshik
_____
Barbara Sarshik
D.C. Bar No. 943605
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (VS-E6012)
Arlington, VA 22226
(703) 562-2309
(703) 562-2482 (Fax)

William S. Jones
Georgia Bar No. 404288
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (VS-E6006)
Arlington, VA 22226
(703) 562-2362
(703) 562-2482 (Fax)

October 1, 2007

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
)
**MARY E. BASS,**                                    )
)
              **Plaintiff,**                              )
)
              **v.**                                      )     **Case No. 1:06-cv-01345-GK**
)
**SHEILA C. BAIR,**                                  )
**Chairman,**                                        )
**Federal Deposit Insurance Corporation,**           )
)
           **Defendant.**                               )
_____)

## DEFENDANT'S STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE ISSUE

1.      Plaintiff Mary Elizabeth Bass, an African American woman, was employed by the Federal Deposit Insurance Corporation ("FDIC") in the Acquisition Services Branch ("ASB") of the Division of Administration as a Supervisory Contract Specialist at all relevant times. (Complaint ("Compl.") ¶¶ 4, 7.)

2.      From February through September 2003, Plaintiff was the Chief of the Program Compliance Unit in ASB.  Beginning in October 2003, Plaintiff was the Chief of the Divisional Contracting Unit in ASB. (Compl. ¶ 7; Exh. 3 - Bass Dep. 10:15-21, 11:7-15, 15:9-14.)

3.      Plaintiff had been promoted to a supervisory grade 14 position in February 2003 when she became chief of the Program Compliance Unit, and her position was converted to Corporate Manager ("CM") designation in April 2004. (Compl. ¶ 7; Exh. 3 - Bass Dep. 11:8-15.)

1

4.      Plaintiff's second-level supervisor was Ann Bridges Steely, the Associate
Director of ASB, beginning in May 2003 when Ms Steely started at the FDIC. (Exh. 10 -
Steely Dep. 6:7-15.) Once Plaintiff became Chief of the Divisional Contracting Unit, her
first-level supervisor was Tom Harris, Assistant Director of ASB.  (Exh. 7 - Harris Aff. 2;
Exh. 1 - Bass Decl. 1.)

5.      ASB's primary responsibility was to support other divisions of the FDIC in
effectuating procurement contracts.  (Exh. 10 - Steely Dep. 7:9-14.)  The Divisional
Contracting Unit, for which Plaintiff became the Chief starting in October 2003, was
directly responsible for providing this contractual support to specific divisions of the
FDIC.  (Exh. 10 - Steely Dep. 13:20-14:2; Exh. 8 - Harris Dep. 39:2-13.)

**A.      The February 3, 2005 Incident**

6.      After Plaintiff began running the Divisional Contracting Unit in October 2003,
Ms. Steely heard repeated complaints about poor customer service being provided by
Plaintiff's unit.  (Exh. 9 - Steely Aff. 3; Exh. 10 - Steely Dep. 63:20-64:11, 65:3-13; Exh.
12 - Woolford Dep. 46:11-47:2, 49:5-13; Exh. 11 - Woolford Decl. ¶ 3; Exh. 6 -
Gambrell Decl. ¶ 4.)

7.      On February 1, 2005, Ms. Steely received yet another complaint expressing
considerable frustration with the delays in Plaintiff's unit from Andrea Woolford, an
Assistant Director in one of the divisions supported by Plaintiff's unit.  In response, Ms.
Steely arranged to meet with Plaintiff and her first-level supervisor, Tom Harris, on
February 3, 2005.  (Exh. 10-1 - Exh. 1 to Steely Dep. 44-45; Exh. 10 - Steely Dep. 66:17-
22; Exh. 9 - Steely Aff. 3; Exh. 11 - Woolford Decl. ¶ 3.)

8.      At that February 3, 2005 meeting, Ms. Steely informed Plaintiff about Ms.
Woolford's complaint, and engaged Plaintiff in a discussion of steps that Plaintiff needed

to take to improve her unit's performance.  (Exh. 10 - Steely Dep. 67:11-20; Exh. 9 -
Steely Aff. 3; Exh. 10-1 - Exh. 1 to Steely Dep. 1, 49-51; Exh. 7 - Harris Aff. 2-3.)

9.      As the meeting ended, Ms. Steely gave a work-related direction to Plaintiff which
she ended by addressing Plaintiff as "Missy." (Exh. 10-1 - Exh. 1 to Steely Dep. 49; Exh.
10 - Steely Dep. 67:20-21; Exh. 9 - Steely Aff. 3; Exh. 7 - Harris Aff. 3.)

10.     On several previous occasions, Ms. Steely had heard Plaintiff addressing other
managers at the FDIC using terms of endearment such as "Sweetie."  Ms. Steely believed
that these terms of endearment were inappropriate, unprofessional, and demeaning to
women.  Accordingly, Ms. Steely had spoken with Plaintiff privately on several
occasions and asked Plaintiff to stop using these terms of endearment. (Exh. 10 - Steely
Dep. 75:21-76:2, 77:12-21; 78:13-16; Exh. 9 - Steely Aff. 5-6; Exh. 7 - Harris Aff. 3-4;
Exh. 3 - Bass Dep. 110:16-20.)

11.     Ignoring Ms. Steely's repeated admonitions, Plaintiff had continued to use terms
of endearment in work-related meetings.  Only a few days before the February 3, 2005
meeting, Plaintiff had attended a business meeting with several other senior officials of
the FDIC, including Donna Gambrell, the Deputy Director of a division supported by
Plaintiff's unit. (Exh. 10 - Steely Dep. 75:21-76:2; Exh. 1 - Bass Decl. 5.)

12.     Although Plaintiff has described Deputy Director Gambrell as a personal friend
(Exh. 5 - Formal Complaint of Discrimination ¶ 4; Exh. 1 - Bass Decl. 5; Exh. 3 - Bass
Dep. 62:20, 102:18-20), the undisputed record shows that there was no such friendship.
By Plaintiff's own admission, she and Ms. Gambrell never had lunch, socialized outside
of work, or engaged in any conversation that was not related to work.  (Exh. 3 - Bass
Dep.105:6-106:16; Exh. 6 - Gambrell Decl. ¶ 3.)

13.    At the start of that earlier meeting with Ms. Gambrell, Plaintiff addressed Ms.

Gambrell as "Sweetie."  Upon hearing this and realizing that Plaintiff had ignored her

repeated admonitions, Ms. Steely decided that Plaintiff might better understand why she

should not use terms of endearment at work if she experienced being spoken to in an

unprofessional manner.  Accordingly, Ms. Steely addressed Plaintiff as "Missy" a few

days later, at the end of the February 3, 2005 meeting.  (Exh. 10 - Steely Dep. 75:21-77:1;

Exh. 9 - Steely Aff. 3; Exh. 10-1 - Exh. 1 to Steely Dep. 1, 49-50; Exh. 4 - Bjorklund

Dep. 50:11-52:17; Exh. 8 - Harris Dep. 105:14-107:16.)

14.    A few minutes after the February 3, 2005 meeting, Ms. Steely visited Plaintiff's

office intending to discuss Plaintiff's continued use of terms of endearment at work.

Hoping to trigger an understanding on Plaintiff's part about how others felt being

addressed in an unprofessional manner, Ms. Steely asked Plaintiff how she had felt being

called "Missy."  Ms. Steely attempted to remind Plaintiff that it was Plaintiff's

responsibility as a manager to set a professional tone in the office and not to address

others in a way that could be perceived as disrespectful.  At that point, Plaintiff became

upset and Ms. Steely left her office.  (Exh. 10 - Steely Dep. 68:21-69:12; Exh. 9 - Steely

Aff. 4-5; Exh. 10-1 - Exh. 1 to Steely Dep. 1, 50-51.)

**B.    Other Underlying Incidents Alleged by Plaintiff**

15.    Plaintiff's hostile work environment claims are based on four other verbal

comments allegedly made to her by Ms. Steely in the 18 months preceding the

February 3, 2005 meeting.  (Exh. 3 - Bass Dep. 17:19-22:21; Exh. 5 - Formal Complaint

of Discrimination ¶ 3-4; Exh. 2 - Bass Addendum to Aff. ¶ 5.)

16.    The first comment was allegedly made by Ms. Steely in August 2003 at a meeting

of ASB managers to discuss an upcoming reorganization.  According to Plaintiff, Ms.

Steely told her, "I don't need your negativity" during the meeting.  (Exh. 3 - Bass Dep. 18:7-10; Exh. 2 - Bass Addendum to Aff. ¶ 5a.)  Plaintiff has no reason to believe that this remark was motivated by racial or retaliatory animus.  (Exh. 3 - Bass Dep. 25:17-26:3.)

17.    The second comment was made in October 2003, in response to Ms. Steely hearing that Plaintiff had criticized Ms. Steely to other ASB employees.  Ms. Steely called Plaintiff into a private meeting that lasted no more than five minutes to express her concern about Plaintiff's criticisms. (Exh. 10 - Steely Dep. 87:9-89:1; Exh. 2 - Bass Addendum to Aff. ¶ 5b; Exh. 3 - Bass Dep. 19:2-9; Exh. 9 - Steely Aff. 8.)  Plaintiff has no reason to believe that Ms. Steely's comment was motivated by racial or retaliatory animus.  (Exh. 3 - Bass Dep. 26:13-21.)

18.    The third comment was made in November or December 2003 in response to concerns that other managers had expressed to Ms. Steely.  At the time, ASB managers planned to hold meetings about the FDIC's pay-for-performance program, and the meetings would include highly confidential information about the performance of individual employees.  Other managers told Ms. Steely that they believed that Plaintiff would leak this confidential information to other employees.  In response, Ms. Steely held a short private meeting with Plaintiff at which she explained this concern to Plaintiff.  (Exh. 3 - Bass Dep. 20:1-21:5; Exh. 2 - Bass Addendum to Aff ¶ 4; Exh. 1 - Bass Decl. 9.)

19.    The fourth comment was made in August 2004 after Ms. Steely heard that Plaintiff had been circulating unfounded rumors about her.  Specifically, Ms. Steely heard that Plaintiff had incorrectly told others that Ms. Steely, who had worked for most of her career at the Department of Defense, had been responsible for having an ASB

employee placed on active military duty. At a private meeting with Plaintiff that lasted no more than five minutes, Ms. Steely denied the rumors and asked Plaintiff to stop spreading them.  (Exh. 3 - Bass Dep. 21:21-22, 22, 32:16-19, 33:4-11; Exh. 2 - Bass Addendum to Aff. ¶ 5-6.)

20.    Ms. Steely did not know about Plaintiff's previous lawsuit against the FDIC until October 2003, when she learned about it only because Plaintiff gratuitously gave Ms. Steely some documents related to the lawsuit.  Even then Ms. Steely did not read those documents because she wanted to focus her efforts on moving forward positively, rather than dwelling on the past.  (Exh. 9 - Steely Aff. 2; Exh. 10 - Steely Dep. 42:12-43:20; Exh. 10-1 - Exh. 1 to Steely Dep. 15-37; Exh. 4 - Bjorklund Dep. 52:20-54:1.)

21.    Plaintiff did not suffer a loss of pay or benefits as a result of the alleged hostile work environment, and did not suffer any monetary loss at all.  (Exh. 3 - Bass Dep. 79:6-16, 80:16-81:1.)

22.    Although Plaintiff claims that she needed medical treatment for stress that she experienced as a result of being addressed as "Missy" on February 3, 2005 (Exh. 3 -Bass Dep. 82:15-22), the record shows that the only medical treatment that Plaintiff sought was from Dr. Bradley Ware. (Exh. 3 - Bass Dep. 82:15-22.)  Plaintiff sought medical treatment from Dr. Ware in April or May 2005 for an upper respiratory problem that may have been flu or strep throat. (Exh. 3 - Bass Dep. 88:3-20.)  Also, Plaintiff sought medical treatment from Dr. Ware in October 2005, eight months after being addressed as "Missy," for a back problem. (Exh. 3 - Bass Dep. 87:4-20.)  That is the only medical treatment that Plaintiff sought from Dr. Ware between February and October 2005, with the exception of having prescriptions filled for high blood pressure, a chronic condition

for which Plaintiff has been treated for more than 20 years, including being treated by Dr. Ware starting in 2001 when she began to see him.  (Exh. 3 - Bass Dep. 84:17-85:8, 86:9-16.)

Respectfully submitted,

/s/ Barbara Sarshik

_____
Barbara Sarshik
D.C. Bar No. 943605
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (VS-E6012)
Arlington, VA 22226
(703) 562-2309
(703) 562-2482 (Fax)

William S. Jones
Georgia Bar No. 404288
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (VS-E6006)
Arlington, VA 22226
(703) 562-2362
(703) 562-2482 (Fax)

October 1, 2007