## DECLARATION

I, Mary Elizabeth Bass, Corporate Manager, CM-1102-1, employed at the Federal Deposit

Insurance Corporation (FDIC), do hereby declare under penalty of perjury as follows:

For the record, I am an African American (Black) and have engaged in prior EEO activity.

I have alleged discrimination based on my race (Black) and retaliation for my prior EEO

activity in that I was the victim of harassment (non-sexual) when, during a meeting on

February 3, 2005, Ann Bridges-Steely, a white female and my second-level supervisor,

ridiculed to me by calling me "Missy" -- a demeaning racist reference  To add insult to

this injury, Bridges-Steely used this racist reference to me in front of my first-level

supervisor, Thomas H. Harris, a white male.

At present, I am the Chief of the Divisional Contracting Unit, Acquisition Services

Branch (ASB), Division of Administration (DOA), FDIC.  My job site is at 1730

Pennsylvania Avenue, NW, Washington, DC 20429.  I have been in this position since

October 2003 and have been a Corporate Manager since April 1, 2004.  My current first-

level supervisor, Thomas H. Harris, is the Assistant Director of the Corporate

Contracting Section.  My second-level supervisor, Ann Bridges-Steely, is the Associate

Director, ASB, DOA.

My prior EEO activity was a law suit I brought against FDIC on a claim of race

discrimination in promotion practices -- *i.e.*, I had been denied the opportunity to

-1-

Declarant's Initials

compete for a promotion to the CG-14 level (and a supervisory position) because of my race (Black). The case was called *Bass v. Tanoue,* and it was designated as Civil Action 00-115 (DAR) in the U.S. District Court for the District of Columbia. The DOA managers involved in that case were not my current managers. The case was tried in 2001. I won a verdict in my favor from the jury and judgment was entered in my favor by the District Court. That Court ordered the FDIC was ordered to promote me and place me in a supervisory position, It also ordered FDIC to pay me a large amount of money in damages and to pay all my legal fees and expenses. FDIC appealed from the judgment of the District Court (the appeal was called *Powell v. Bass,* and designated Appeal No. 02-5027 by the U.S. Court of Appeals for the D.C. Circuit). However, the litigation was settled before the appeal went forward to decision as a result of court-ordered mediation. In the end, under the settlement and the District Court judgment, I was promoted to the CG-14 level and provided a supervisory position, without a probationary period (now my CM level job), paid a large amount of money by FDIC as compensatory damages, and had all my legal fees and costs paid by FDIC. It was a total victory.

**February 3, 2005 Meeting and Subsequent Events --**

On Tuesday, February 1, 2005, Mr. Harris scheduled a meeting for Thursday, February 3, 2005, to begin at 9:00 a.m., in Ms. Bridges- Steely's office. The purpose of this meeting was to discuss issues concerning projects out of the Division of Insurance and Research (DIR) and the Division of Supervision and Consumer Compliance (DSC). Ms. Bridges-Steely had requested the meeting. I was required to attend because DIR and DSC are two

-2-

Declarant's Initials

of the FDIC program offices to which my unit provides contracting services.

On Thursday, February 3, 2005, at approximately 9:00 a.m., Mr. Harris, Ms. Bridges-Steely, and I met in Ms. Bridges-Steely's office to discuss the DIR/DSC issues. Ms. Bridges-Steely started the meeting with a discussion with me in a very sarcastic, condescending and cold manner. She stated that my clients (*e.g.*, DIR) had complained that I had not been returning their calls in a timely manner and that I had not timely responded to projects that had been received in my unit in or about late December 2004 / January 2005. She coldly alleged that many of my clients had stated that although I was very nice to work with, my unit could not get the work completed. I responded that this assertion was simply not true. She asked about a project out of DSC that I had determined could be procured using my "FDIC Procurement Credit Card,." inquiring, accusingly, why this project was taking so long to complete? I informed her that the program office (DSC) could not make-up its mind what it wanted. She then turned to Mr. Harris and told him that she needed to speak with him. I asked her if she needed anything else from me and, in response, she dismissed me stating -- in a very nasty and condescending tone -- that I should "go and take care of that work '*Missy*'."

My response back to Ms. Bridges-Steely was "Ok, Missy, I'll take care of the work!" and I walked out of her office and proceeded immediately back to my own office. Mr. Harris did not make any comment when Ms. Bridges-Steely referred to me as "Missy". It was my clear impression at the time that Ms. Bridges-Steely was using the word "Missy" as a derogatory racial slur and I was very shocked and hurt when she first said it to me in

-3-

Declarant's Initials

front of Mr. Harris.  That it was meant as a hurtful racist slur was confirmed a few minutes after I left her office, when Ms. Bridges- Steely came to my office -- some ten minutes later -- to continue to slight me.  Once she arrived at my office and I closed my door, Ms. Bridges-Steely proceeded to sarcastically ask how I felt when she referred to me as "Missy."  She also asked, "Didn't I tell you that someone at my former agency filed an EEO complaint because someone called them 'Sweetie.'" [As I recall, during a meeting in the November/December 2003 time frame  she had told me about someone filing an EEO complaint at her former agency concerning the use of the term "Sweetie.".] I immediately asked her if she wanted to file an EEO complaint against me.  She did not respond.

At the moment she came to my office to confront me a few minutes after calling me "Missy" in front of white male supervisor, my emotions went through the roof, and I could not believe she would be harassing me like this -- *i.e.*, creating such a hostile work environment for me.  All I could think of was:  here I go again with the FDIC and this organization's dismal history of discrimination against minorities.  I had flashed backs of my seven-year battle with FDIC and how I had to go to U.S. District Court to fight for my rights and to be vindicated.  So, I mentioned my prior discrimination case to Ms. Bridges-Steely, and she very sarcastically and coldly stated that my discrimination case was before her coming to FDIC, and that I needed to leave the past behind.   I guess she failed to realized, or just did not care, that when she called me "Missy" she brought back not only the memory of my case and why I had filed it; worse, she brought back all of the

-4-

Declarant's Initials
Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 1

very dehumanizing memories of how African Americans had been dehumanized by the slave masters during the institution of slavery in America and by the crackers during Jim Crow.   Due to individuals like Ann Bridges-Steely, it seems that Black Americans will forever keep re-living their past nightmares.

During this second conversation with Ms. Bridges-Steely on February 3, 2005, she also revealed that she bears a grudge against me because of the way that I had greeted a friend -- Donna Gambrel, an African American, and the Deputy Director of DSC.   It seems that during a private conversation which occurred in the lobby area outside of a conference room just before a meeting on Tuesday, February 1, 2005, with FDIC's DSC (Ms. Bridges-Steely and Mr. Harris attended the meeting with me), Ms. Bridges-Steely had overheard me use the term "Sweetie" in greeting my friend Donna Gambrel.  During that second February 3 conversation, I informed Ms. Bridges-Steely that I was an adult, and she could not tell me how to greet my friends.  In fact, she stated that the way I greeted Ms. Gambrel, by saying "Sweetie", was "very disrespectful," and that was why (she claimed) that she refer to me as "Missy" earlier in her office -- *i.e.*, to show me how it felt to be disrespected (I suppose).   In fact, all I felt was that she was being very disrespectful in using "Missy" and that this after-the-fact justification (two days later) was nothing more a pretextual mask for what her use of "Missy" really was:  a gross racial slur against me.  In any event, I immediately told Bridges-Steely that Ms. Gambrel was my friend, and on several occasions has referred to me as "Sweetie" and that it was none of her business.

-5-

Declarant's Initials

I was so upset at the way Ms. Bridges-Steely was harassing me in my own office that I informed her that our relationship would be strictly business from that point forward. It is my belief that Ms. Bridges-Steely's actions towards me on Thursday, February 3, 2005, were pre-meditated. In other words, Ms. Bridges-Steely knew exactly what she was doing. How she could used the racial slur "Missy" to me, and then attempt to use as an excuse my greeting to a personal friend in DSC in a private conversation two days earlier (on February 1, 2005) is simply adding insult to injury. It was a premeditated racist remark and nothing less.

In any case, after Ms. Bridges- Steely exited my office, I was so upset that I telephoned my husband, and explained to him what had happen. He helped me to calm down (as he knows that I suffer from hypertension and should not get excited). He informed me that I did not have to take that kind of treatment from my second-level supervisor (or anyone else), and he agreed with me that I should request an EEO Counselor. After I finished talking with my husband, on the telephone, I took a few deep breaths and emailed Michael Collins, Director, Office of Diversity and Economic Opportunity (ODEO), and requested EEO Counseling with regard to Ms. Bridges-Steely's harassment of me (hostile work environment) because of my race and in retaliation for my prior EEO activity at FDIC.

After sending the email to Mr. Collins, I went to Mr. Harris' office and informed him that I was tired of Ms. Bridges-Steely harassing me, and that I had requested an EEO

-6-

Declarant's Initials

Counselor. Mr. Harris never asked me why I had requested an EEO Counselor. In fact, he has never asked me about Ms. Bridges-Steely calling me "Missy" in front of him in her office on February 3, 2005 at all.

**My Use of the Term "Sweetie" --**

As to my use of the term "Sweetie" as a greeting or in reference to friends and acquaintances, I would noted the following: I have been employed by the FDIC for almost 14 years (Hired by the FDIC/(Former) Resolution Trust Corporation (RTC) December 1991), I have greeted and been greeted by numerous colleagues, personal friends, executives, etc., here at the Corporation using "Sweetie" and being referred to by others (executives included) as "Sweetie." This has occurred in various settings, over the almost 14 years that I have been employed by the FDIC. I have never taken offense at the term being used in others addressing me, nor has anyone else ever told me that they were offended or felt disrespected when I used the term in addressing them. In fact, the only person who has ever made any issue over this at all was Ms. Bridges-Steely -- and I never referred to her as "Sweetie" or addressed her using that word. She made mention of my use of the word "Sweetie" twice -- once (as noted) on February 3, 2005, and on an earlier occasion during a meeting that she requested with me concerning Corporate Success Award Nominations, in the late November / early December 2003, time frame. During that 2003 meeting, Bridges-Steely, unsolicited, informed me that someone at her former agency had filed an EEO complaint against a woman for referring to them as "Sweetie." I am not aware of any of the current managers under Ms. Bridges-Steely

-7-

Declarant's Initials

supervision use of terms of endearment, etc., because I only have a business/working

relationship with these managers. For the record, all of these managers are white. The

only other manager that I frequently used terms of endearment with in ASB is someone

that I consider to be a friend -- and that person, Lynn Carr-Hawkes, Corporate Manager,

CM-1102-1, has been deployed on active duty in the military since the Summer of 2004.

For the record, Ms. Carr-Hawkes is Black, and I have know her since 1992, when we

were co-workers at the RTC.


I do not use any terms of endearment with reference to or in addressing Ms. Bridges-

Steely as I have only a professional relationship with her. No one whom I have

addressed as "Sweetie" or any other term of endearment or friendship at the FDIC has

ever complained to me about my doing so or otherwise indicated to me, directly or

indirectly, that my doing so made him/her uncomfortable. If I had ever gotten wind of

any such complaint or discomfort, I would have certainly apologized to the person

personally and discontinued my use of the any term of endearment with that person. I

was just brought up that way.


**Background Information --**

On several occasions, in the past year and a half (the time frame maybe a little more than

a year and a half, actually), Ms. Bridges-Steely has made statements to me that have

made me very uncomfortable, caused me to be intimidated, and has effectively created

for me a hostile work environment within ASB. I believe that her calling me "Missy" on

-8-

Declarant's Initials

February 3, 2005, in front of Mr. Harris, was just another one of her attacks against me, which I believe began during the Summer of 2003. I also believe that her conduct is motivated by and intent to discriminate against me because of my race and/or retaliate against me for my prior EEO activity / participating in judicial proceeding covered by the anti-discrimination statute Title VII of the Civil Rights Act, wherein, as noted, a jury in the federal court found that the FDIC had discrimination against me based on my race (Black/African American).

While it is true that Ms. Bridges- Steely was not employed with the FDIC at the time of the above verdict (having came on board as the Associate Director of ASB in May 2003), she has indicated an antipathy for me based on my prior EEO litigation. In or about November or December 2003, she informed me during meeting in her office concerning Corporate Success Awards (CSA Nominations) that she had been informed about me and my discrimination case before she accepted the job as Associate Director in May 2003. During this meeting, Ms. Bridges-Steely also told me that the other ASB Managers did not "feel comfortable" with me being in an upcoming meeting (which was scheduled to be held approximately the following week) to discuss ASB staff CSA nominations. She stated that the other managers "felt" that I would tell staff members if they had been nominated or not for a CSA.

I was appalled that Ms. Bridges-Steely would call me into her office for such a discussion. The first thing I asked her was if Mr. David K. McDermott (White),

-9-

Assistant Director, ASB, was one of the managers who she claimed felt uncomfortable

with me, because if so, I told her he had been one of the managers that was found to have

discriminated against me by the U.S. District Court. It was this inquiry that led Ms.

Bridges-Steely to tell me about the fact that she had been informed about my

discrimination case prior to her accepting the ASB job -- but she never told me the name

or names of the ASB Managers who she claimed felt uncomfortable with me.

It is clear enough to me that Ms. Bridges-Steely is on a campaign to harass me and create

a hostile work environment for me. All the evidence to me points to race and/or

retaliation for my prior EEO case as the motive behind her inappropriate treatment of me.

I have read the foregoing statement, consisting of 10 pages (the first nine of which I have
initialed and the last one I have signed), and I declare it under penalty of perjury to be true
and complete to the best of my knowledge and belief. Any corrections that I have made
have my initials next to the correction. This statement was made of my free will without any
threat, promise of immunity or inducement. I understand that the information I have given
is not to be considered confidential and that it may be shown to the interested parties.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th
day of May 2005.

MARY E. BASS

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 1