ADDENDUM TO AFFIDAVIT

District of Columbia   }

I, Mary Elizabeth Bass, Corporate Manager, CM-1102-1, employed at the Federal Deposit Insurance Corporation (FDIC), hereby solemnly swear under penalty of perjury and make this addendum to my affidavit in order to address certain additional factual inquiries of the EEO investigator that were inadvertently omitted from my initial affidavit:

1.     As to why I claim that Ms. Bridges-Steely's reference to me as "Missy" was done in retaliation for prior EEO activity, it is based on what she said to me as part of her relentless attacks against me which began during the summer of 2003. Although Ms. Bridges-Steely was not employed with the FDIC at the time of the jury verdict finding for me in my race discrimination suit against the FDIC (*i.e.*, *Bass v. Tanoue*, Civil Action No. 00-115 DAR)," in November / December 2003, she informed me in a most threatening manner during an unrelated meeting in her office that she had been informed about me and my discrimination case even before she accepted the job as Associate Director (which was in May 2003).

2.     With regard to the harm I suffered (and continue to suffer) as a result of Ms. Bridges-Steely's attitude and statements to/against me, I am at pains to not that no human being can be expected to continue to function productively under the type of hostile, uncomfortable and intimidating circumstances that I am having been forced to endure in ASB under Ms. Bridges-Steely. As the top boss in ASB, my own first-level supervisor (Mr. Harris), reports directly to her. While I do not know for sure his real feelings, he acts as though he is afraid of her. Indeed,

Page 1 of 6                                                              Initials ___

ADDENDUM TO AFFIDAVIT

as of today, Mr. Harris has yet to discussed with me Ms. Bridges-Steely referring to me as "Missy" in front of him on February 3, 2005. Moreover, Ms. Bridges-Steely comes at me with direct intimidation and harassment regarding issues that Mr. Harris has never even discussed with me (*e.g.*, see ¶ 5 below). In short, I have no support from my immediate supervisor, and I am having to defend myself against a second-level superior who has limited knowledge of my job performance, but an abundance of antipathy for me personally -- though without any rational cause. The consequence is that I am subjected to personal and professional humiliation by Ms. Bridges-Steely on a regular basis as part of the hostile work environment she has created for me. Also, due to Ms. Bridges-Steely's actions, my family is being harmed financially, because of the amount of money that I am having to spend legally to fight for my rights and my job. Most of all, my family life is suffering, because of the amount of stress that I bring home daily as a result of the hostile work environment in ASB. All of the above constitutes harm and injury in my book.

3.     As to whether any other employees have been referred to as "Missy" by Ms. Bridges-Steely, I have no knowledge whatsoever. As far as I know, her racist comments in this regard is unique to me -- which is why, coupled with her revelation that she was "put wise" to me and my prior EEO case prior to accepting her job in ASB, that I believe that retaliation (in addition to racial discrimination) is at the core of Ms. Bridges-Steely's motivation in creating the hostile environment for me.

## ADDENDUM TO AFFIDAVIT

4. Other than my attendance at a mandatory EEO training course for FDIC supervisors in approximately February / March 2003 at Seidman Center in Arlington, Virginia -- which to my recollection covered the areas of preventing, reporting, and/or mitigating harassment on the job -- I have had no training on preventing, reporting, or mitigating harassment.

5. On several occasions during the past year and a half to two years Ms. Bridges-Steely has made statements to me or taken actions which caused me discomfort, were intimidating, or otherwise caused me to suffer a hostile work environment.

    a. Indeed, her calling me "Missy" on February 3, 2005 in front of Mr. Harris was just one of her attacks against me. Her entire campaign seems to has started in the summer of 2003 -- just after she came to ASB (and just after she learned of my prior EEO activity -- which was resolved in my favor to the FDIC's embarrassment prior to her arrival in ASB or her employment with FDIC). As early as August / September 2003, Ms. Bridges-Steely directed a rather nasty-toned negative comment towards me in an ASB Managers' meeting, coldly stating in front of my colleagues that she did not need my "negativity" in reaction to a comment that I made concerning the pending re-organization of ASB that would be effective October 1, 2003. Her statement in the meeting made me feel very uncomfortable and greatly intimidated me in front of my colleagues (the other managers), but I did not confronted her in the meeting in the presence of the other ASB managers in attendance (Rodney Cartwright, Lynn Carr-Hawkes, Harry Baker, Thomas Harris, Beverly Shuck, and David K. McDermott, were present in addition to Ms. Bridges-Steely and myself). Rather, I asked if I could speak with her in my office. Once there, I asked her not to embarrass me like that again in front of other individuals. I also asked

ADDENDUM TO AFFIDAVIT

her if the reason why she had responded to my comment concerning the then-pending ASB reorganization so coldly in the meeting had anything to do with the fact that I had won discrimination case against the FDIC and, in this connection, whether any of the ASB Managers -- specifically Mr. David K. McDermott (White), Assistant Director -- had mentioned my case to her. When she indicated that no one had mentioned my prior case to her, I took it at face value (*i.e.*, I let this incident go) and proceeded to tell her that I wished the upcoming ASB reorganization success and I would do everything possible to help make it successful. With this, the meeting ended -- without me knowing what had caused her public nastiness to me.

      b.      During late September or early October 2003, Ms. Bridges-Steely asked me to meet with her in her office. With only the two of us present, she stated that she called me to the meeting to discuss a rumors -- that someone had told her that I made negative comments about her. She refused to say who had told her such a thing. I reacted by saying her that I could not believe she was calling me in her office to discuss rumors, and promptly I left her office. This meeting lasted approximately five minutes. This entire affair made me feel very uncomfortable: it was certainly intimidating coming from my new second-level supervisor, and it surely helped create a hostile work environment for me. Nothing like this has ever happened with Mr. Harris, my immediate supervisor. The message was clear: the "big boss" -- who barely knows me -- is out too get me!

      c.      A month or two later (in the November / December 2003 time frame), Ms. Bridges-Steely informed me -- again during meeting in her office with just the two of us were present -- that she had been was informed about me and my discrimination case even before she accepted the job as Associate Director, ASB (in May 2003). This meeting had nothing to do

Page 4 of 6                                                               Initials

ADDENDUM TO AFFIDAVIT

with this subject -- having been concerned with Corporate Success Awards (CSA) nominations. Ms. Steely also used this occasion to allege that the other ASB managers did not "feel comfortable" with me being in the upcoming meeting to discuss ASB staff CSA nominations (which was scheduled to be held approximately a week later). She said that the "other managers" felt that I would tell staff members if they had been nominated or not for a CSA. Naturally, I was appalled that she would make such allegations from an anonymous source(s). The first thing I asked her was if David K. McDermott was one of the managers who claimed to feel uncomfortable with my presence at the upcoming CSA nominations meeting because, if so, he was one of the managers whom the jury and judge had found had discriminated against me in my law suit. This is the part of the conversation that seems to have led Ms. Bridges-Steely to tell that she had been informed about my past discrimination case prior to coming to the ASB job. In any case, she never told me the name or names of the ASB managers who allegedly felt uncomfortable with me attending the ASB nominations meeting. This entire discussion left me feeling very uncomfortable and intimidated. It seemed calculated to place me in a hostile work environment, one in which, notwithstanding no discussions at any time on these subjects with my immediate supervisor, the new "big boss" appeared to be really out to get me.

    d.    One other instance in which Ms. Bridges-Steely harassed me prior to her racial slur against me on February 3, 2005, comes to mind. Less than a year ago, on or about August 10, 2004, Ms. Bridges-Steely called me into her office (again, it was just the two of us in her office) to tell me that she had heard a rumor that I had told someone that she had Lynn Carr-Hawkes deployed with the military based on her own (Bridges-Steely) prior employment

ADDENDUM TO AFFIDAVIT

connection with the Defense Department. This was of course a complete fabrication and I immediately told her so and that I could not believe she had called me into her office for such nonsense. Although this little confrontation lasted only a few minutes, it left me feeling very uncomfortable and intimidated -- given what had gone on previously.

Certainly, my work environment was by this point hostile due to Ms. Bridges-Steely's actions and attitudes. I started telling myself that I could not keep putting up with these type assaults from Ms. Bridges-Steely, and continue to be a productive employee of the FDIC. With this as a backdrop, on February 3, 2005, I decided to stand-up for my rights by contacting EEO when Ms. Bridges-Steely referred to me as "Missy." It was the final straw, but it was not the first incident in her campaign of harassment and intimidation.

I have read the foregoing statement, consisting of __6__ pages, each of which I have initialed, and it is true and complete to the best of my knowledge and belief. Any corrections that I have made have my initials next to the correction. This statement was made of my free will without any threat, promise of immunity or inducement. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

I declare under penalty of perjury that the foregoing is true and correct. Executed this __31st__ day of May 2005.

_____
Mary E. Bass