A F F I D A V I T

District of Columbia }

I, Thomas D. Harris, Corporate Manager, CM-2, 1102 Contracting series, employed at the Federal Deposit Insurance Corporation (FDIC), hereby solemnly swear under penalty of perjury and make this statement. For the record, my race is White.

I understand that the claim accepted for investigation is whether Mary Bass was discriminated against based on her race (Black) and prior EEO activity, and whether she was the victim of harassment (non-sexual) when during a meeting on February 3, 2005, Ann Bridges Steely, her second-level supervisor, referred to her by calling her "Missy." This was done in front of her first-level supervisor.

At present, I am Assistant Director for Corporate Contracting, Acquisition Services Branch (ASB), Division of Administration (DOA), FDIC, 1730 Pennsylvania Avenue, NW, Washington, DC 20006. I began working for the federal government in September 1985 and began working for the Resolution Trust Corporation (RTC) in July 1991. When RTC closed in December, 1995, I became an employee of the FDIC. I have been in my current position since October 1, 2003. My first-level supervisor is Ann Bridges Steely, Associate Director, ASB, and my second-level supervisor is Glen Bjorklund, Deputy Director, DOA.

I have known Ms. Bass since the 1991-1992 timeframe. We both worked in the RTC's Contracting Office and Office of Contractor Oversight and Surveillance as colleagues.

AFFIDAVIT

When RTC closed in December, 1995, we became colleagues in FDIC's Contracting Office until October 1, 2003, when she became a direct report of mine. Other than general day to day discussions on minor issues, when she became a direct report of mine was the first time we have worked directly together. I currently now have daily contact with her. Ms. Bass's race is African-American and I became aware of it the day I met her sometime in 1991-92.

I am aware of her prior EEO activity. As stated above, she was a colleague of mine while her prior EEO activity was going on. I never inquired in anyway about the status of it. My only knowledge of the case was what I heard through rumors and speculation from other staff members. At some point I know it was settled, but I do not know the details except that there was a financial settlement and I've heard conflicting stories on this as well. Since she began reporting to me, I've never inquired from her or anyone else any more details on the status of her prior case.

I was present at the meeting on February 3, 2005 where the incident occurred that is the basis for Ms. Bass's complaint. Attendees were Ms. Bass, Ms. Steely, and myself. The meeting was held to discuss workload issues in Ms. Bass's section and issues and complaints from her clients about her staff. Ms. Bass was asked what her approach was to deal with complaints from clients concerning her staff. As these discussions unfolded, Ms. Bass seemed to get defensive. Ms. Bass did not really provide any specific answer to the question other than to say she regularly talks with her staff. Rather, she stated she thought she was doing a good job, but based on the discussions in this meeting it sounded



like others did not feel that way. Discussions were then held regarding Ms. Bass attending a management class to enhance her management skills. At the end of the meeting, Ms. Steely used the word "Missy" with Mary.

About 30 minutes to one hour after the meeting, I was sitting at my desk when Ms. Bass came to my office, closed the door, and told me that she was going to the Office of Diversity and Economic Opportunity (ODEO). It is my understanding that after the meeting mentioned above, Ms. Bass and Ms. Steely talked further.

Later in the day on February 3, 2005, since I am a direct report of Ms. Steely I told her about the conversation Ms. Bass and I had when Ms. Bass came to my office to tell me that she was going to ODEO to discuss her options. Ms. Steely stated she and Mary had talked further and that she told Mary she had used the term "Missy" as a teaching tool since Mary has a habit of using similar terms of endearment when speaking with others.

Ms. Bass does use such terms of endearment as "Sweetie" when interacting with colleagues. Long before this incident happened, Ms. Steely informed me, as Ms. Bass's supervisor, that Ms. Bass had used the term "Sweetie" with her and that she asked Ms. Bass to not refer to her that way as it was not appropriate and she did not appreciate it. I have also witnessed Ms. Bass use these terms. In a meeting with one of our clients, the Division of Supervision and Consumer Protection (DSC), attended by the Director and Deputy Directors of DSC, Ms. Bass referred to one of the DSC Deputy Directors as "Sweetie." On the way back from the meeting, Ms. Steely mentioned to Ms. Bass that

she should not use these terms with colleagues, especially senior FDIC management officials.

On another occasion, Ms. Bass called me "Sweetie." Immediately after saying this, she apologized and said she did not mean to say it. I've also had other colleagues state they have heard Ms. Bass speak in this manner, and they did not think it was appropriate.

I am not aware of any other people under my supervision or within ASB whose custom or habit it is to use terms of endearment with colleagues while in the workplace.

To my knowledge, Ms. Bass's race and prior EEO activity were absolutely not factors in Ms. Steely addressing her as "Missy." From my perspective, I think Ms. Steely has gone to great lengths to tell people that everyone was starting with a clean slate when she came on board approximately two years ago. Shortly after her arrival, she conducted a survey to determine what the issues were within ASB. The results of the survey disclosed many individuals were unhappy about personnel issues, work assignments, and felt prior to her arrival retribution was a problem within ASB and that management avoided and did not resolve conflicts effectively. In order to address these issues, Ms. Steely asked for both direct and anonymous feedback from the staff. In order to try and improve the work atmosphere, Ms. Steely re-aligned the branch in order to provide for a more equitable distribution of the work and provide more staff members opportunities to work on higher profile projects, assigned part of the ASB awards budget to a committee of staff members to recommend awards without management involvement, set up another committee of

AFFIDAVIT

only staff members to come up with fun activities to try and bring the branch closer together, brought in outside consultants on numerous occasions to engage in team building activities, and hired a consultant to specifically perform conflict management training for all ASB management. I do not know about Ms. Steely's awareness of Ms. Bass's prior EEO activity, but based on her record of trying to bring the branch together and statements to ASB staff that everyone started with a clean slate the day she arrived, I find it very hard to believe Ms. Bass's prior EEO activity was a factor in the incident at hand. I also do not believe the reference to Ms. Bass as "Missy" created a hostile work environment for her and both before and since the incident has occurred I've seen no indication that she is being or has been treated any differently than any other employee.

I have only had brief conversations with Ms. Steely about the investigation, e.g., "do you know the status"", what are the next steps," etc? I have had no conversations with anyone else about it, however, several individuals within ASB have told me they were aware of the incident and grievance procedures were involved. It was my understanding from talking with these individuals that Ms. Bass had told them about the incident.

At the time of the incident, the Corporation was offering a buyout as an incentive for people to leave the FDIC. After the incident, Ms. Bass spoke to me several times about the case. In each instance, I did not bring the case up, rather, she did in answering questions I posed to her about her and her staff's buyout plans. It was common practice for me as a second line supervisor to ask both of my first line supervisors from time to time what their intentions were with regard to the buyout as well as the intentions of their

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 7

Page 5 of 8                                                        Initials

staffs. In response to one of these questions, Ms. Bass stated she was "outta here." I asked her if that meant she was going to take the buyout and she said no. She stated she and her attorney were looking at amending her prior settlement agreement to give her full retirement benefits, with no penalty for early retirement. It is my understanding Ms. Bass isn't eligible for early retirement. She stated the buyout money was therefore not a concern as it was relatively small in comparison to receiving full retirement benefits. She also stated that the grievance process would last longer than the buyout period and she would stay to see that through. She then stated she could not talk anymore due to the fact there was a gag order on her case. I then told her that despite the grievance I expected her full performance on the job. She stated she would provide full performance, but reminded me that she was allowed official time to pursue her EEO claim. When the results of DOA's salary increases and awards were approved based on calendar year 2004 performance in accordance with the Corporation's pay and benefits plan for CM's, I had a discussion with Ms. Bass and informed her she would receive a 3.2% raise. Her response was that she "was not going to fight the battle, she was going to fight the war." I wasn't sure what she meant by this statement, but after further discussion I was led to believe she was talking about her current EEO grievance. Several weeks later, in another discussion about staff member's intentions on taking the buyout, Ms. Bass again stated she was looking at getting a full retirement settlement from FDIC with no penalties for early out. She also stated in this discussion that in settling her prior case, Miguel Torrado, Associate Director for the Human Resources Branch, stated she should be a grade 15. I wasn't sure what she meant by this, but concluded it must be something she

A F F I D A V I T

believes is relevant to her current case. None of the discussions above were initiated by me.

AFFIDAVIT

I have read the foregoing statement, consisting of ____ pages, each of which I have initialed, and it is true and complete to the best of my knowledge and belief. Any corrections that I have made have my initials next to the correction. This statement was made of my free will without any threat, promise of immunity or inducement. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___8th___ day of __July__, 2005.

_____
Thomas D. Harris

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 7

Page 8 of 8                                                                 Initials