UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


W4444444444444444444444444447
                              5
MARY E. BASS,                 5
                              5
         Plaintiff,           5
                              5
         v.                   5
                              5 Case No.
SHEILA C. BAIR,               5 1:06CV01345
Chairman, FDIC                5
                              5
         Defendant.           5
                              5
W4444444444444444444444444448

Wednesday, May 30, 2007


DEPOSITION OF:
         THOMAS DUNN HARRIS

called for examination by counsel for the
Plaintiff pursuant to notice of deposition
in Conference Room E7003 of the FDIC, 3501
Fairfax Drive, Arlington, VA 22226, when
were present on behalf of the respective
parties:

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    www.nealrgross.com

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 8

Appearances:

On Behalf of the Plaintiff:

    DAVID H. SHAPIRO, ESQ.
Of:  Swick & Shapiro, P.C.
    1225 Eye Street, N.W.
    Suite 1290
    Washington, D.C. 20005
    (202)842-0300
    (202)842-1418 fax
    DHShapiro@SwickAndShapiro.com

On Behalf of the FDIC:

    BARBARA SARSHIK, ESQ.
    WILLIAM S. JONES, ESQ.
Of:  Federal Deposit Insurance Corporation
    Labor, Employment & Administration Section
    3501 Fairfax Drive, Room E-6012
    Arlington, VA 22226
    (703)562-2309
    (703)562-2482 fax
    Bsarshik@fdic.gov

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 8

```
 1                    P-R-O-C-E-E-D-I-N-G-S

 2                                       4:02 P.M.

 3              THE REPORTER:  Please raise your

 4   right hand.

 5   Whereupon,

 6              THOMAS HARRIS

 7   was called as a witness and, having been first

 8   duly sworn, was examined and testified as

 9   follows:

10              MR. SHAPIRO:  Would you state your

11   full name, please?

12              THE WITNESS:  Thomas Dunn Harris.

13              MR. SHAPIRO:  D-u-n-n?

14              THE WITNESS:  D-u-n-n, correct.

15              MR.  SHAPIRO:   Can  you  tell  us

16   where you live, Mr. Harris?

17              THE  WITNESS:   South  Riding,

18   Virginia.

19              MR. SHAPIRO:  Can you give me your

20   address?

21              THE WITNESS:  Yes, 43337 Burkedale

22   Street.
```

**NEAL R. GROSS**              Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS              Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433       WASHINGTON, D.C.  20005-3701       www.nealrgross.com

1          MR. SHAPIRO:  Burkedale?

2          THE WITNESS:  Yes.

3          MR. SHAPIRO:  B-u-r?

4          THE WITNESS:  Yes.

5          MR. SHAPIRO:  B-u-r-k-e?

6          THE WITNESS:  E.

7          MR. SHAPIRO:  D-a-l-e?

8          THE WITNESS:  Yes.

9          MR. SHAPIRO:  Burkedale --

10          THE WITNESS:  Street.

11          MR. SHAPIRO:  Street.  And where

12   is that?

13          THE  WITNESS:    South  Riding,

14   Virginia.

15          MR. SHAPIRO:  R-i-d-e?  R-i-d-i-n-

16   g?

17          THE WITNESS:  Correct.

18          MR. SHAPIRO:  And the zip code?

19          THE WITNESS:  20152.

20          MR.  SHAPIRO:   And  is  there  a

21   telephone number there, sir?

22          MS. SARSHIK:  I'm going to object.

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1    Is there any particular reason that you need

2    his telephone number?

3              MR. SHAPIRO:  Sure, if I'm going

4    to serve him with a subpoena, the process

5    server wants a telephone number.  That's why.

6              MS. SARSHIK:  But he's a current

7    employee of the FDIC.  Is there any reason

8    that you would need to serve him with a

9    subpoena?

10             MR. SHAPIRO:   Sure, a trial

11   subpoena.  If you wouldn't produce him, I

12   would have to subpoena him.  I have to

13   guarantee his attendance, so I would subpoena

14   him.  So I would send the subpoena.  If he

15   would agree to accept service of a subpoena,

16   by delivery of a subpoena to you or to the

17   legal office, I can dispense with it.

18             MS. SARSHIK:  No, but we would

19   agree to give you the phone number now as long

20   as you agree that the phone number will be

21   treated in confidence.

22             MR. SHAPIRO:  Sure.

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS                    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1              MS. SARSHIK:  You and your client.

2              MR. SHAPIRO:  Sure.

3              THE WITNESS:  703-327-5417.

4              MR.  SHAPIRO:   Do  you  have  any

5    plans to move?

6              THE  WITNESS:   I  don't  know  what

7    the future holds.

8              MR. SHAPIRO:  I understand.  Plans

9    to move, do you have current plans to move?

10             THE WITNESS:  No.

11                DIRECT EXAMINATION

12             BY MR. SHAPIRO:

13        Q    Are you currently employed?

14        A    Yes.

15        Q    Where are you employed?

16        A    FDIC.

17        Q    How  long  have  you  been  with  the

18   FDIC?

19        A    Since 1996.

20        Q    Were you with the RTC before that?

21        A    Yes.

22        Q    And  how  long  were  you  with  the

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1  RTC, from when until `96?

2       A     July `91 till the end of `95.

3       Q     What is your current position with

4  the FDIC?

5       A     Assistant Director of Corporate

6  Contracting.

7       Q     And that's a unit at the FDIC,

8  Corporate Contracting?  Is it a branch, a

9  section, a division?

10       A     Section.

11       Q     And what division is it in?

12       A     Division of Administration.

13       Q     And your offices are here or in

14  Washington?

15       A     Here.

16       Q     And how long have you been in

17  Virginia Square?

18       A     Since February or March of 2006.

19       Q     Prior you were in Washington, DC?

20       A     Yes.

21       Q     How long have you been the

22  Assistant Director of Corporate Contracting?

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

```
1          A     Three and a half years.

2          Q     Since the beginning of `94?

3          A     2004.

4          Q     I'm   sorry,   2004,   since   the

5    beginning of 2004?

6          A     Approximately that time frame.

7          Q     And prior to that, what was your

8    position?

9          A     I was the Unit Chief, Information

10   Technology, Contracting.

11         Q     Your current grade?

12         A     CM-2.

13         Q     And as a Unit Chief in Information

14   Technology Contracting what was your grade?

15         A     14.

16         Q     CG-14?

17         A     Yes.

18         Q     Was it a promotion when you became

19   the Assistant Director?

20         A     Yes.

21         Q     And that promotion was to GN-2?

22         A     It was to 15.
```

**NEAL R. GROSS**                    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS                              Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

1          Q    So it was before the GN system?

2               MS.   SARSHIK:    I   believe   he

3     testified that he was a CM.

4               BY MR. SHAPIRO:

5          Q    A CM, sorry.

6          A    CM.

7          Q    Yes, before you were a CM-2, you

8     were a CG-15?

9          A    Correct.

10         Q    All right, and that was what the

11    promotion got and then it was converted to CM?

12         A    Yes.

13         Q    Okay.  So it was in late 2003 or

14    early 2004 that you were promoted.

15         A    No.

16         Q    When did you -- oh, that's when

17    you got your position as Assistant Director,

18    right?

19         A    I was promoted before that and

20    then transferred to the position I'm in now.

21         Q    So when were you promoted?

22         A    I believe it was February or March

**NEAL R. GROSS**                    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS              Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

1    of 2003.

2        Q    And then what position did you

3    serve when you were promoted?

4        A    I    was    Assistant    Director

5    Operations Section, I believe was the title.

6        Q    Okay, so immediately before you

7    were Unit Chief of Information Technology?

8        A    I'm sorry, it was -- I was the DIT

9    Contracting Officer.  Then I was promoted to

10   the 15 and to this Operations Section for a

11   few months.

12       Q    Operations Section is different

13   from the Unit Chief Information Technology?

14       A    Yes.

15       Q    So and what position did you serve

16   in the 15 capacity?

17       A    As the --

18       Q    Assistant Director?

19       A    -- Operations Section.

20       Q    And that's for contracting?

21       A    Yes.

22       Q    All  of  contracting,  Corporate

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1    Contracting?

2        A    I don't remember the exact title.

3        Q    So you went from an Assistant

4    Director in the Operations Section to an

5    Assistant    Director    in    the    Corporate

6    Contracting Section.

7        A    Yes.

8        Q    Okay, no promotion there.

9        A    No.

10       Q    Okay, but you did get a promotion

11   less than a year before that when you became

12   the Assistant Director.

13       A    Yes.

14       Q    All right, before that you were a

15   Unit Chief in the Information Technology?

16       A    Yes.

17       Q    Okay, as a CG-14, how long did you

18   hold that job?

19       A    Five or six years.

20       Q    So was that the first job you had

21   at FDIC?

22       A    No.

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1    Q    Okay, so it was the prior job.

2    A    I was -- I don't remember the

3    title.  I was in the SAMDA closeout section.

4    Q    I'm sorry, it was in the --

5    A    SAMDA.

6    Q    SAMDA, that's an acronym?

7    A    Yes.

8    Q    What is it, S --

9    A    S-A-M-D-A.

10    Q    D-A?

11    A    Yes.

12    Q    SAMDA closeout.  And were you a

13    contracting officer?

14    A    Yes.

15    Q    What was your grade?

16    A    14.

17    Q    So when you got the Unit Chief

18    position, it wasn't a promotion.

19    A    Correct.

20    Q    Okay, was that a supervisory job,

21    the SAMDA closeout section?

22    A    No.

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1          Q    So was the first supervisory job

2    you had at FDIC the Unit Chief job?

3          A    Yes.

4          Q    And when did you get that job?

5          A    I don't recall the exact date.

6          Q    But you had it for five or six

7    years.

8          A    Yes.

9          Q    So some time in the 1990s.

10         A    Yes.

11         Q    Okay, was the SAMDA closeout

12   section job you had the first job you had in

13   FDIC?

14         A    Yes.

15         Q    Okay, so you got that in `96,

16   January `96.  That's the job you came over

17   from --

18         A    Yes.

19         Q    -- RTC for.

20         A    Yes.

21         Q    Now, I take it that you came over

22   from RTC in the merger.

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1          A     Correct.

2          Q     In RTC what did you do?  What was

3     your last job at RTC?

4          A     That's SAMDA closeout section.

5          Q     Were you a supervisor?

6          A     No.

7          Q     You  were  just  a  Contracting

8     Officer?

9          A     Yes.

10         Q     How many contracting officers were

11    there in that SAMDA closeout section?

12         A     I don't remember.

13         Q     But you were one of several.

14         A     Yes.

15         Q     Who was your boss?

16         A     Tom Hearn.

17         Q     Tom spell it.

18         A     Hearn.

19         Q     Hearn, H --

20         A     E-a-r-n.

21         Q     Okay, and was he your boss when

22    you  came  over  to  the  FDIC  in  the  SAMSA

**NEAL R. GROSS**     Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS        Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

1    closeout section?

2         A    Yes.

3         Q    Okay.  When you were the Assistant

4    Director of the Operations -- of the -- when

5    you were the Unit Chief as the CG-14, who was

6    your boss?

7         A    Rodney Cartwright.

8         Q    He's an African American male?

9         A    Yes.

10        Q    And what about Mr. Hearn, White

11   male?

12        A    Yes.

13        Q    Just for the record, you're a

14   White male?

15        A    Yes.

16        Q    Okay, when you were Assistant

17   Director for the Operations Section who was

18   your boss?  I know you were only there for

19   about maybe eight, 10 months.

20        A    Ann Steely.

21        Q    Ann Steely.  And when you were

22   first over here as the Assistant Director for

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 8

```
 1     Corporate -- for -- you were the Assistant

 2     Director of Corporate Contracting, who was

 3     your boss?

 4          A    I    believe   it   was   Rodney

 5     Cartwright.  I'm sorry, can you rephrase that

 6     question?

 7          Q    Yes.  You said that you were the

 8     Assistant Director of Corporate Contracting

 9     from about January of `04 to the present, your

10     current job, right?

11          A    Yes.

12          Q    Who was your boss?

13          A    Ann Steely.

14          Q    And who is your boss now?

15          A    Mike Rubino.

16          Q    Mr. Rubino is serving in Ms.

17     Steely's old job or he's was the second level?

18          A    He's acting in Ms. Steely's job.

19          Q    Okay, and was he Ms. Steely's

20     boss?

21          A    No.

22          Q    Okay, who is your second level
```

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1    supervisor?

2         A    Glen Bjorklund.

3         Q    And was he your second level when

4    Ms. Steely was your boss?

5         A    Yes.

6         Q    Going back to the RTC, you said

7    your last job was the SAMDA Closeout Section,

8    and what grade were you there?

9         A    14.

10        Q    That was CG also?

11        A    I don't recall.  I believe so.

12        Q    Okay, was that your first job in

13   RTC?

14        A    No.

15        Q    What was your job before you were

16   SAMDA Closeout Section?

17        A    I was in the Office of Contractor

18   Oversight and Surveillance.

19        Q    And what was your job there?

20        A    Contract Administrator.

21        Q    Grade?

22        A    14.

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

```
 1            Q     And who was your boss there?

 2            A     I don't recall a name.

 3            Q     All  right,  how  long  did  you  --

 4      when did you first take the SAMDA job at RTC?

 5            A     I don't recall the exact date.

 6            Q     Okay.   When did you come to RTC?

 7            A     July 1991.

 8            Q     And you left in January `96.

 9            A     Whatever the date of the merger.

10            Q     Right.  So did you have other jobs

11      beside the Office of Contractor Oversight and

12      Surveillance and the SAMDA Closeout Section at

13      RTC?

14            A     Yes.

15            Q     What    was    your    job    before

16      Contractor Oversight and Surveillance?

17            A     I was a Contract Specialist.

18            Q     And in what unit?

19            A     I don't recall the title.

20            Q     You  don't  recall  what  the  unit

21      was?  You were awarding contracts?

22            A     Yes.
```

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1          Q     Were you a Contract Officer?

2          A     No.

3          Q     So you didn't have the authority

4     to award?

5          A     Correct.

6          Q     But you worked on awards.

7          A     Correct.

8          Q     So when you were -- just to be 100

9     percent sure, a Contract Administrator works

10    on  contracts  that  are  already  awarded,

11    correct,  administering  contracts  that  are

12    already awarded?

13         A     Usually.

14         Q     And  a  Contract  Officer  has

15    authority to award contracts, correct?

16         A     Usually.

17         Q     And a Contract Specialist may work

18    for either an Administrator or a Contracting

19    Officer, correct?

20         A     They could.

21         Q     You  worked  for  a  Contracting

22    Officer.  In other words, what you did as a

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS                    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

20

1      Contract Specialist was working on the awards

2      of contracts, not the administration of

3      contracts; is that right?

4           A     At that time, I did both.

5           Q     Okay, you did both.  And who did

6      you work for?

7           A     Greg Betor.

8           Q     Greg?

9           A     Betor.

10           Q     B-e --

11           A     T-o-r.

12           Q     And is that your first job in RTC?

13           A     Yes.

14           Q     And what grade were you when you

15      started as a Contract Specialist in RTC?

16           A     12.

17           Q     And I take it you were promoted to

18      a 13 as a Contract Specialist?

19           A     Yes.

20           Q     When did you get your promotion?

21           A     I don't recall the exact date.

22           Q     So you came to the RTC as a

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1   Contract Specialist, CG-12.

2         A      Yes.

3         Q      In 1991.

4         A      Yes.

5         Q      Before you came to RTC, were you

6   with the FDIC?

7         A      No.

8         Q      Who did you work for?

9         A      Naval Air Systems Command.

10        Q      And what was your job?

11        A      Contract Specialist.

12        Q      Grade at the end?

13        A      13.

14        Q      And that's GS-13, correct?

15        A      Yes.

16        Q      Okay, so you went from a GS-13 in

17  the Naval Air Systems Command to a CG-12 in

18  the RTC, correct?

19        A      Yes.

20        Q      Okay.   And how long were you in

21  the Naval Air Systems Command?

22        A      Five and a half years.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 8

22

1          Q     Did  you  come  as  a  Contract

2     Specialist, GS-13?

3          A     No.

4          Q     You came as a Contract Specialist,

5     though, did you?

6          A     Yes.

7          Q     And what was your grade?

8          A     Seven.

9          Q     Now, is that a trainee level or is

10    that a Contract Specialist level?

11         A     It was a training program.

12         Q     And do you recall the year that

13    you came to Naval Air Systems Command?

14         A     1985.

15         Q     So you were there till the early

16    `90s; is that right?

17         A     Yes.

18         Q     1991.

19         A     Yes.

20         Q     Was  there  a  break  in  service

21    between  your starting at the RTC and your

22    leaving the Naval Air Systems Command?

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1        A      No.

2        Q      All right, before you came to the

3    Naval  Air  Systems  Command  as  a  Contract

4    Specialist Trainee, GS-7, were you employed?

5        A      Yes.

6        Q      And where were you employed?

7        A      Larry Quinn & Associates?

8        Q      Larry Quinn, Q-u-i-n-n?

9        A      Yes.

10       Q      And where was that?

11       A      Vienna,  Virginia,  no,  McLean,

12   Virginia.

13       Q      And  what  did  Larry  Quinn  and

14   Associates do?

15       A      Property maintenance.

16       Q      And your job?

17       A      Maintained properties.

18       Q      Physically maintain them, were you

19   a blue collar employee or a white collar

20   employee?

21       A      Blue collar.

22       Q      When  you  say  you  maintained

**NEAL R. GROSS**                    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS              Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        www.nealrgross.com

1    properties, was it outdoor work or indoor?

2        A    Both.

3        Q    And how long did you work for

4    Larry Quinn and Associates?

5        A    Five years.

6        Q    Was there a break between your

7    employment with Larry Quinn and Associates and

8    Naval Air Systems Command?

9        A    A few weeks.

10       Q    Okay, so you were there then in

11   1980 to 1985.  Would that be accurate?

12       A    I believe so.

13       Q    Okay, and what was -- your

14   specific job at Larry Quinn and Associates was

15   property maintenance.  You were a worker.

16       A    Yes.

17       Q    You didn't supervise.

18       A    No.

19       Q    Did you supervise anybody at the

20   RTC?

21       A    Yes.

22       Q    Did you supervise anybody at the

**NEAL R. GROSS**                    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS              Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

1    Naval Air Systems Command?

2         A    No.

3         Q    Which job did you have when you

4    were a supervisor at the RTC?

5         A    Contract Administrator, Office of

6    Contract Oversight and Surveillance.

7         Q    So when you were at SAMDA you were

8    not a supervisor.

9         A    No.

10        Q    How many people did you supervise

11   when you were in the oversight and the

12   Contractor Oversight and Surveillance Office?

13        A    Three.

14        Q    And what grade levels were they?

15        A    I don't recall specifically.

16        Q    What jobs were they?

17        A    I don't remember the titles.

18        Q    Okay, when you were in Contract

19   Administration, that is an 1101 series job?

20        A    They were 1102s.

21        Q    1102s, okay.  Have you ever been

22   an 1101?

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1          A     No.

2          Q     So your jobs in contracting have

3    been 1102.

4          A     Yes.

5          Q     You're still an 1102?

6          A     Yes.

7          Q     Okay, so you started as an 1102

8    when you first went to Naval Air Systems

9    Command as a trainee, correct?

10         A     Yes.

11         Q     And you've been an 1102 ever

12   since?

13         A     Yes.

14         Q     Okay, and you're currently an

15   1102.

16         A     Yes.

17         Q     Prior to Larry Quinn and

18   Associates, were you gainfully employed?

19         A     No.

20         Q     What did you do?

21         A     High school.

22         Q     Where did you go to high school?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433       WASHINGTON, D.C.  20005-3701       www.nealrgross.com

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 8

27

```
1          A     Lake Braddock Secondary School.

2          Q     And  did  you  graduate  from  high

3     school?

4          A     Yes.

5          Q     And when did you graduate?

6          A     1981.

7          Q     And  was  that  from  Lake  Braddock

8     Secondary School?

9          A     Yes.

10         Q     Okay.  And that was the 12th grade?

11         A     Yes.

12         Q     Okay, did you go to college?

13         A     Yes.

14         Q     And where did you go to college?

15         A     Virginia Tech.

16         Q     And  when  did  you  attend  Virginia

17    Tech, the years?

18         A     1981 to 1985.

19         Q     Do you have a degree from Virginia

20    Tech?

21         A     Yes.

22         Q     So  while  you  were  in  Virginia
```

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 8
www.nealrgross.com

28

1    Tech, you were working for Larry Quinn and

2    Associates.  Was it a part time job, Larry

3    Quinn?

4         A    Yes.

5         Q    Okay, and do you have a degree

6    from Virginia Tech?

7         A    Yes.

8         Q    And what is the degree in?

9         A    Finance.

10         Q    That's a Bachelor of --

11         A    Science.

12         Q    --  Science  in  Business

13    Administration or Finance?

14         A    Finance.

15         Q    Do you have any degree above the

16    Bachelor's level?

17         A    No.

18         Q    Do you have any graduate school

19    work?

20         A    No.

21         Q    Have you taken any government

22    contracting courses?

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1          A     Yes.

2          Q     And   where   did   you   take   the

3    government contracting courses?

4          A     Various.

5          Q     Well,   were   they   given   by   the

6    Office of Personnel Management, the US Office

7    of Personnel Management?

8          A     I don't recall.

9          Q     Were   they   given   by   federal

10   contractors, like schools that are courses of

11   study in government contracting?

12         A     I'm not sure I understand.

13         Q     Well, there are companies that run

14   courses in government contracting.  Did you

15   take any of those?

16         A     I'm not exactly sure who sponsored

17   the classes.

18         Q     Okay.   Do   you   recall   how   many

19   classes you've taken?

20         A     No.

21         Q     Okay,   now,   did   you   take   any

22   courses in personnel management, that is to

**NEAL R. GROSS**     Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS     Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433     WASHINGTON, D.C.  20005-3701     www.nealrgross.com

1    say, supervision?

2         A    I'm not exactly sure.

3         Q    Okay, you can't recall any, can

4    you?

5         A    Not specifically by the title.

6         Q    Well, I'm not asking you the

7    title. I'm asking you are there courses in

8    supervision that you took.

9         A    I've taken courses that had

10   supervision in them.

11        Q    For example?

12        A    An FDIC sponsored course.

13        Q    And what is it about generally?

14        A    Just a course they give managers.

15        Q    Okay, how many courses that they

16   give managers did you take over here at the

17   FDIC?

18        A    I don't recall the exact number.

19        Q    More than two?

20        A    Yes.

21        Q    And more than five?

22        A    I don't recall.

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1          Q      Did you take any such courses at

2     the RTC?

3          A      No.

4          Q      How many people are under you now?

5          A      Eight.

6          Q      And what is the greatest number of

7     people that have been under you?

8          A      Thirteen, 14.

9          Q      What are the grades of the eight

10    people that are under you now?

11         A      It varies.

12         Q      What are they?

13         A      13.

14         Q      How many 13s?

15         A      Six, I believe.

16         Q      And the others?

17         A      14.

18         Q      How many?

19         A      Two.

20         Q      And are they 1102 employees?

21         A      Yes.  Actually, I have two interns

22    as well.

**NEAL R. GROSS**            Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS        Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

1          Q      Full time or just summer interns?

2          A      One of each.

3          Q      One summer intern and one full

4      time intern?

5          A      Yes.

6          Q      And what grade is the intern?

7          A      I'm not sure.

8          Q      You know Mary Bass?

9          A      Yes.

10         Q      When did you first meet Mary?

11         A      When I first came to RTC.

12         Q      When you first came to RTC or when

13     she first came?

14         A      I don't recall if she was there

15     when I got there or not.

16         Q      Okay, so it may be that she was

17     there when you first came to RTC or it might

18     be the other way around.

19         A      Yes.

20         Q      Okay, but when you first came to

21     RTC, that's when you met Mary.  You might have

22     started on the same day but it --

**NEAL R. GROSS**                          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS                    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1          A      I met Mary at RTC.

2          Q      Did you work together at RTC?

3          A      I don't believe we were in the

4     same unit.

5          Q      Did she work for you at RTC when

6     you were a supervisor?

7          A      No.

8          Q      And you don't believe you were in

9     the same unit, as far as you can recall?

10         A      No.

11         Q      Okay, were you in the same unit at

12    any point in the FDIC before you supervised

13    her?

14         A      No.

15         Q      So you first worked together with

16    Mary when you were her supervisor.  That was

17    the first time you worked with her in the same

18    unit.

19         A      In the same unit.

20         Q      Is that correct?

21         A      Yes.

22         Q      And so that would have been when?

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

34

1    What jobs did you have?

2       A    Assistant    Director,    Corporate

3    Contracting.

4       Q    So you didn't work with Mary in

5    the same unit until about three, three and a

6    half years ago.

7       A    Yes.

8       Q    And when you became the Assistant

9    Director for Corporate Contracting, was that

10    a new job?  Excuse me, I'm not being very

11    clear.  Was it a newly created job when you

12    took it?

13       A    Yes.

14       Q    Yes?

15       A    Yes, I said, yes.

16       Q    Oh, I see.  And was Mary put into

17    that section, Mary Bass put into that section

18    when it was created?

19       A    Yes.

20       Q    So   you   both   arrived   in   the

21    section, in the Corporate Contracting Section

22    at the same time.

**NEAL R. GROSS**   Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS   Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433   WASHINGTON, D.C.  20005-3701   www.nealrgross.com

1           A     Yes.

2           Q     You, as a GM-2, right --

3           A     I don't recall the grade.

4                 MS.  SARSHIK:    I  believe  he

5     testified that it was CM.

6                 BY MR. SHAPIRO:

7           Q     CM, I'm sorry, CM-2 and what grade

8     was Ms. Bass?

9           A     I don't recall.

10          Q     Well, was she a CM-2 as well, CM-

11    1?

12          A     I don't recall.

13          Q     Was she a supervisor?

14          A     Yes.

15          Q     Yes.  Was she a new supervisor or

16    had she already been a supervisor?

17          A     I  believe  she  had  been  a

18    supervisor.

19          Q     And how many people were on her

20    staff when she worked for you?

21          A     I don't recall the exact number.

22          Q     Well, you supervised directly how

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1    many people?

2          A      Two.

3          Q      Two  Section  Chiefs  or  Branch

4    Chiefs.

5          A      I don't recall the exact title.

6          Q      But they were supervisors.

7          A      Yes.

8          Q      You supervise two supervisors and

9    they supervise people.

10         A      Yes.

11         Q      Who was the other subordinate?

12         A      Harry Baker.

13         Q      Harry Baker.  And his race?

14         A      White.

15         Q      And what was his grade?

16         A      Can you clarify that?

17         Q      What was his grade?  You were a

18   CM-2.

19         A      CM-1.

20         Q      He was a CM-1.

21         A      Yes.

22         Q      And what was his position?

**NEAL R. GROSS**                    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS            Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

37

1          A      Unit Chief.

2          Q      Unit  Chief.   And  what  unit  was

3     that?

4          A      Division of Administration.

5          Q      Well,  you  were  the  Division  of

6     Administration.  What unit did he have?

7          A      Division    of    Administration

8     Contracting.

9          Q      He,  Harry  Baker,  headed  the

10    Contracting in the Division of Administration?

11         A      For     the     Division     of

12    Administration.

13         Q      What I'm trying to get at is, the

14    Division of Administration has more than just

15    Contracting, correct?

16         A      Yes.

17         Q      Okay, and then in the Division of

18    Administration there's a section which has to

19    do with contracting.

20         A      Yes.

21         Q      Okay,  you  were  the  Assistant

22    Director of that section.

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

38

1          A     Yes.

2          Q     The Director of that section was

3     Ms. Steely, right?

4          A     Yes.

5          Q     All right, and under Ms. Steely

6     how many supervisors reported directly to Ms.

7     Steely?

8          A     Three.

9          Q     So there were three Assistant

10    Directors?

11         A     Yes.

12         Q     And you were one of them.

13         A     Yes.

14         Q     For corporate contracting.

15         A     Yes.

16         Q     Okay, and under you there were two

17    supervisors.

18         A     Yes.

19         Q     One unit and another unit.  These

20    have functional purposes, was one --

21         A     Yes.

22         Q     What was Mr. Baker's functional

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1    purpose?

2           A     He supported the contracting needs

3    for the Division of Administration.

4           Q     I see.  And Mary Bass, she was the

5    other supervisor under you, right?

6           A     Yes.

7           Q     She headed a unit.

8           A     Yes.

9           Q     What was that unit doing?

10          A     The other divisions except for IT.

11          Q     So   she   supported   the   other

12   divisions of the corporation?

13          A     Yes.

14          Q     With the exception of IT.

15          A     And Division of Administration.

16          Q     And  Division  of  Administration.

17   Who did the IT?

18          A     Dave McDermott.

19          Q     Say again?

20          A     Dave McDermott.

21          Q     Ah,  Mr.  McDermott,  and  Mr.

22   McDermott, was he on your level or on Mary's

**NEAL R. GROSS**                    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS                    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

```
 1    level, Mary and Harry Baker's level?

 2         A    My level.

 3         Q    Okay, so IT was handled specially.

 4         A    Separately.

 5         Q    Separately, right.  And they had

 6    an Assistant Director in charge of just IT.

 7         A    Yes.

 8         Q    Okay, whereas everything else was

 9    -- all other corporate contracting was done

10    out of your section.

11         A    No.

12         Q    Where    else    was    corporate

13    contracting done?

14         A    Some regional offices.

15         Q    Okay.  Was yours a policy shop or

16    an  operations shop?

17         A    Operations.

18         Q    So DOA was supported by Mr. Baker

19    and his staff, right?

20         A    Yes.

21         Q    All contracts in the Division of

22    Administration  were  awarded  through  his
```

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 8

1    office, except for IT.

2         A    Mostly.

3         Q    Mostly.  And everything else, the

4    Division of Finance, and the other divisions

5    of  the  FDIC,  they  were  supported  in

6    contracting efforts by Mary Bass' unit.

7         A    Yes.

8         Q    And how many people worked for Ms.

9    Bass?

10        A    I don't recall the exact number.

11        Q    She worked for you for how long,

12   from when you got there, three and a half

13   years ago, till when did she stop working

14   there?

15        A    Whatever the date she went to DSC.

16        Q    Okay.  And  did  you  give  her

17   performance appraisals?

18        A    Yes.

19        Q    Was she an able performer?

20        A    What do you mean by able?

21        Q    Well, what kind of ratings did you

22   give her?

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

42

1        A    She received meets expectations

2    ratings.

3        Q    I'm sorry.

4        A    Meets expectations ratings.

5        Q    She got met -- meets expectations,

6    anything higher?

7        A    Not that I recall.

8        Q    Anything in which she was

9    unsatisfactory?

10       A    No.

11       Q    Okay, how about Mr. Baker, what

12   kind of ratings did he get?

13       A    Meets expectations.

14       Q    Okay.  And you, what kind of

15   ratings did you get?

16       A    Meets expectations.

17       Q    Okay, your ratings were done by

18   Ms. Steely.

19       A    Yes.

20       Q    Mary Bass and Mr. Baker's ratings

21   were done by you.

22       A    Yes.

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

```
 1          Q     Okay,   and   who   approved   her

 2     ratings, Ms. Steely?

 3          A     Me.

 4          Q     No,  but  was  there  a  reviewing

 5     official?   Somebody  above  you  that  had  to

 6     approve the ratings?

 7          A     No.

 8          Q     Okay,  so  you  were  the  rating

 9     official  and you approved them as well.

10          A     Yes.

11          Q     Okay,  they  didn't  get  reviewed

12     higher up than you.

13          A     No.

14          Q     Who has Mary's job now?

15          A     Can you clarify that?

16          Q     Yes, well, do you still have two

17     units reporting to you?

18          A     No.

19          Q     How   many   units   do   you   have

20     reporting to you now?

21          A     Zero.

22          Q     All right, you're not in the same
```

**NEAL R. GROSS**         Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS         Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433         WASHINGTON, D.C.  20005-3701         www.nealrgross.com

44

1    job?

2         A    I am.

3         Q    What happened to the units?

4         A    In corporate reorganization, they

5    went away.

6         Q    So who supports -- do you have

7    subordinate supervisors reporting to you?

8         A    No.

9         Q    All right, how many people do you

10   have reporting now?

11        A    Eight.

12        Q    Do these people support -- except

13   for IT, do they support that contracting

14   effort of the whole corporation?

15        A    No.

16        Q    What do they support?

17        A    Can you clarify that?

18        Q    Well, do your people still do the

19   same job, operational contracting?

20        A    Yes.

21        Q    Awarding and administration?

22        A    Yes.

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1        Q      Okay, and what units in the FDIC

2    do they support?

3        A      All but IT, ODEO, OIG, DIR.

4        Q      Okay, everything else.  And who

5    supports those units that are not supported by

6    you?

7        A      Dave McDermott.

8        Q      And is he still doing the IT?

9        A      Yes.

10       Q      So are those IT units; is that why

11   he has them or is it just a need to divide?

12       A      I don't understand your question.

13       Q      What's the rationale for having

14   these other units services by Mr. McDermott's

15   people?

16       A      Just part of the reorganization.

17       Q      Okay.  How many people do Mr.

18   McDermott have?

19       A      Six.

20       Q      So the units are roughly

21   comparable in size?

22       A      Yes.

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1          Q      Who does Mr. McDermott report to?

2          A      Mike Rubino.

3          Q      So you both report to Mr. Rubino.

4     In his job that he is serving, acting in?

5          A      Yes.

6          Q      So both of you report to him as

7     the acting.   Ms. Bridges Steely, did Mr.

8     McDermott report to her?

9          A      Yes.

10         Q      Anybody else report to Ms. Bridges

11    Steely, any other Section Chiefs besides you

12    and Mr. McDermott?

13         A      Yes.

14         Q      Who?

15         A      Trisha Bursey.

16         Q      Trisha Bursey?   Can you spell

17    that?

18         A      B-u-r-s-e-y.

19         Q      What race is Ms. Bursey?

20         A      African American.

21         Q      And what unit does she head up?

22         A      Policy and Operations.

**NEAL R. GROSS**        Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS        Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

1        Q    Policy and Operations, in what,

2    Contracting?

3        A    Yes.

4        Q    So does -- is she your boss?

5        A    No.

6        Q    What operations does she have?

7        A    I think it's just a title.

8        Q    In other words, she's the policy

9    shop.

10       A    Yes.

11       Q    And you and McDermott are the

12   operations shops.

13       A    Yes.

14       Q    And now you have it divided up not

15   along technology and non-technology but just

16   divided, although he continues to have

17   technology.

18       A    Yes.

19       Q    Some units -- some areas that your

20   subordinates used to service are now serviced

21   by him and his subordinates.

22       A    Yes.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 8

48

```
 1          Q    Okay, vice versa?  Do you have any

 2    areas that he used to have?

 3          A    No.

 4          Q    Okay, and policy is done by Ms. --

 5          A    Yes, I do.

 6          Q    What area do you have?

 7          A    It's not a specific area, it's a

 8    sub-set of an area.

 9          Q    What's that?

10          A    The Insurance Contracts.

11          Q    Insurance Contracts.  And he does

12    administration as well as contract awards as

13    you do.

14          A    Yes.

15          Q    And Ms. Bursey heads up the policy

16    shop.

17          A    Yes.

18          Q    Okay.  And Ms. Bursey's grade is

19    what?

20          A    CM-2.

21          Q    So the Section Chiefs are CM-2s,

22    right?
```

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 8

```
 1          A      Yes.

 2          Q      You, Bursey and McDermott, right?

 3          A      Yes.

 4          Q      And you serve under Rubino.  What

 5   grade is he?

 6          A      I'm not sure.

 7          Q      Okay,   you    no   longer    have

 8   subordinate supervisors.

 9          A      Yes.

10          Q      You do not or --

11          A      Oh, correct, no, none.

12          Q      And when did they go away?  When

13   did you stop having subordinate supervisors?

14          A      The   official   date   of   the

15   reorganization.

16          Q      Last year, the year before?

17          A      2006.

18          Q      2006.  So when Mary Bass was still

19   there, she was a subordinate supervisor.

20          A      Yes.

21          Q      It was after she left that the

22   reorg took into account; is that right?
```

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1        A    Yes.

2        Q    Mr. Baker, was he caught up in the

3    reorganization?  In other words, was he there

4    when the reorganization happened?

5        A    Yes.

6        Q    What happened to his job?

7        A    I'm not exactly sure what you're

8    saying.

9        Q    Well, was the Unit Chief job --

10    were the Unit Chief jobs abolished?

11        A    Yes.

12        Q    What happened to Mr. Baker?

13        A    He took the buy-out.

14        Q    He took a buy-out.  Okay, and when

15    was the buy-out offered, as part of the reorg?

16        A    As part of it.

17        Q    Who replaced Ms. Bass when she

18    left as a Unit Chief?

19        A    No one.

20        Q    At that point did you know you

21    were going to be reorganized?

22        A    Yes.

**NEAL R. GROSS**                    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS                      Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

51

1          Q    Okay, did Ms. Bass leave as part

2     of the reorg?

3          A    Can you clarify that?

4          Q    Was her job moved elsewhere or did

5     she   leave   your   unit   as   part   of   the

6     reorganization?

7          A    She left the unit and went to DSC.

8          Q    Before the reorganization?

9          A    Yes.

10         Q    Was   it   prompted   by   the

11    reorganization?  In other words, had the reorg

12    been announced before she left?

13         A    Yes.  Yes.

14         Q    Now,  I  want  to  direct  your

15    attention to Ms. -- how was your relationship

16    with Ms. Bass?  Good?

17         A    Professional.

18         Q    Okay.  How long did you supervise

19    her?  For how long?

20         A    Three and a half years.

21         Q    So when did she leave?

22         A    It  was  --  actually  it  wouldn't

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1    have been that long.  She left in August, I

2    believe, 2006.

3         Q    Okay, so if you started there I

4    think you said around the beginning of 2004,

5    and she left --

6         A    It was the end of 2003.

7         Q    You started the end of 2003.  So

8    it was a little bit more than two and a half

9    years, right, that you supervised Ms. Bass.

10        A    Whatever that works out to be.

11        Q    Okay, did you give her any formal

12   performance appraisals?

13        A    Yes.

14        Q    How many?

15        A    I don't recall the exact number.

16        Q    When was the last time you

17   reviewed those appraisals?

18        A    Reviewed them?

19        Q    Yes, looked them over to see what

20   you had given Ms. Bass, how you had rated her.

21        A    Yesterday.

22        Q    Yesterday.  So how many were there

**NEAL R. GROSS**         Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS         Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433         WASHINGTON, D.C.  20005-3701         www.nealrgross.com

53

1    that you saw yesterday?

2          A    One.

3          Q    Just one, and do you recall the

4    year that it was?

5          A    2005.

6          Q    Okay, so the date on the appraisal

7    was 2005 or it was for 2005?

8          A    For 2005.

9          Q    So it was dated in 2006?

10         A    Yes.

11         Q    All right, was it for fiscal or

12    calendar 2005 or some other array of 2005?

13         A    I believe calendar.

14         Q    Okay.  So you never rated her

15    performance in 2006 at all?

16         A    No.

17         Q    All right, and did you rate her in

18    2004?

19         A    Yes.

20         Q    You did, but you didn't review

21    that yesterday.  You didn't review that

22    yesterday.

**NEAL R. GROSS**   Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS   Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433   WASHINGTON, D.C.  20005-3701   www.nealrgross.com

54

1        A    No.

2        Q    Okay, you only reviewed the 2005

3    appraisal.

4        A    Yes.

5        Q    Okay, what was the date of the

6    2005 appraisal?  When did you give it to her?

7        A    I don't recall the exact date.

8        Q    What month?

9        A    January.

10       Q    Okay.   Do  you  have  mid-year

11   reviews here in the FDIC?

12       A    Yes.

13       Q    And did you give her a mid-year

14   review in 2006?

15       A    Yes.

16       Q    Was it a written review?

17       A    Yes.

18       Q    And when did you see that last?

19       A    Yesterday.

20       Q    All right, and what review did you

21   give her?  What did you give her in terms of

22   your appraisal of her work?

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS              Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

1          A    Meets expectations.

2          Q    Okay.    What  are  the  ratings

3     available in 2005/2006?  What's the system?

4          A    Meets expectations, doesn't meet

5     expectations, marginal.

6          Q    I see.  So there's pass, fail and

7     then something in between?

8          A    Yes.

9          Q    Okay.    And how long has  that

10    system been there, since you've been in your

11    current job?

12         A    I don't recall the exact date.

13         Q    Well, was it the same system that

14    you rated Ms. Bass in 2004 as in 2005?

15         A    Yes.

16         Q    So it was a pass/fail system?

17         A    Yes.

18         Q    Sort  of  a  modified  pass/fail,

19    there's three grades, right?

20         A    I don't recall exactly when --

21         Q    Meets, doesn't meet and something

22    in between.

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1          A    I don't recall exactly when the --

2          Q    Okay, so it was either pass fail

3     or pass/fail modified.  Is that fair?

4          A    Yes.

5          Q    Now, how do managers get -- in

6     this sort of system with pass/fail, how do you

7     get bonuses or raises?  How is the percentage

8     of  raise  and  the  bonus  determined  for

9     managerial employees?

10         A    As a pool.

11         Q    Okay,  and  you  get  a  certain

12    percentage share of the pool?

13         A    Can you clarify that?

14         Q    Yes, your raise is determined by a

15    share of the pool?

16         A    Yes.

17         Q    Okay, and does everybody get the

18    same share of the pool?

19         A    No.

20         Q    All right, and that's not keyed to

21    the performance appraisal, is it, the share

22    that you get of the pool?

**NEAL R. GROSS**                    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS                    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1          A    Correct.

2          Q    All   right,   that's   keyed   to

3    something else.  What is that keyed to?

4          A    I don't understand.

5          Q    Well,   how   do   they   determine

6    whether  somebody  gets  a  higher  share  or  a

7    lower share of the pool?

8          A    Based on assessment contributions.

9          Q    But  not  the  same  as  performance

10   appraisal, a different assessment, correct?

11         A    Yes.

12         Q    Okay, so do you rate the people or

13   does  somebody  else  rate  the  people  for  the

14   purposes of percentage of pool, bonuses?

15         A    I was part of the process.

16         Q    All  right,  how  did  you  rate  Ms.

17   Bass in 2005?

18              MS. SARSHIK:  I going to object on

19   the  grounds  that  the  question  is  confusing

20   because  you  haven't  made  clear  whether  you

21   mean  in  2005,  for  a  previous  period  of  time,

22   or --

**NEAL R. GROSS**                    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS              Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

1                    MR. SHAPIRO:   I'm talking about

2       for 2005.  I'm talking about for 2005.

3                    BY MR. SHAPIRO:

4            Q    When  we  talk  about  the  2005

5       rating, it was given in January 2006 but it

6       was for calendar year 2005, correct?

7            A    Yes.

8            Q    That's  what  you  said,  isn't  it?

9       And that's called the 2005 rating, correct?

10           A    Yes.

11           Q    Okay, so that's what we're talking

12      about.  There's no confusion here, is there,

13      as to which rating we're talking about?  When

14      I say 2005, I mean the rating for 2005.

15           A    No.

16           Q    Okay, are we communicating?

17           A    Now.

18           Q    Okay, so how did you give Ms. --

19      how -- and the bonus determinations and the

20      raise  determinations,  there's  two  separate

21      determinations, correct?

22           A    Yes.

**NEAL R. GROSS**                    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS            Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

59

1          Q       Bonus and raise.

2          A       Yes.

3          Q       And both come out of pools or just

4    the bonus comes out of a pool?

5          A       Both.

6          Q       Okay, and this is not the same as

7    the  performance  appraisal  that  we've  been

8    talking  about,  right?    It's  a  separate

9    determination.

10         A       Yes.

11         Q       Okay, and you said you're a part

12   of it.  You're the first part.  You make a

13   recommendation, correct?

14         A       No.

15         Q       What do you do?  What's your part?

16         A       It's done as a group.

17         Q       It's  done  as  a  group.   All  the

18   supervisors at your level?

19         A       No.

20         Q       Tell me about the group.

21         A       My level and Ann Steely.

22         Q       I  see,  and  how  many  supervisors

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1    would that be; you, Mr. McDermott and the

2    policy person, Ms. Bursey?

3         A    Yes.

4         Q    So the four of you would sit down

5    in  -- let's take the period following 2005.

6    When would this be done?

7         A    I don't recall the exact date.

8         Q    Okay, but it would be done once a

9    year?

10        A    Yes.

11        Q    For both bonus and for raise?

12        A    Yes.

13        Q    Same meeting?

14        A    Yes.

15        Q    Okay, and what exactly would you

16   determine, would you put your people in

17   cohorts, is that the idea?

18        A    I don't understand.

19        Q    You would separate the people in

20   Ms. Steely's unit into the percentage of high,

21   percentage of middle, percentage of low.  Is

22   that the idea?

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1          A      Not exactly that.

2          Q      But you would separate them into

3    groups.

4          A      No.

5          Q      Okay, what would you do?

6          A      Rank.

7          Q      You would rank them.  Rank them

8    individually?  So if there were 100 people,

9    there would be 100 different places?

10         A      Yes.

11         Q      Okay,    and    would    then    the

12   percentages go up and you would know a certain

13   percentage   would   get   a   high   raise,   more

14   percentage would get a different raise, like

15   that?  They would be grouped?

16         A      Not grouped.

17         Q      Not grouped.  How would they do it

18   then?

19         A      Talked it through.

20         Q      Talked it through and what would

21   the end be, what would it look like after you

22   four got finished with your work in this bonus

**NEAL R. GROSS**      Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS      Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433      WASHINGTON, D.C.  20005-3701      www.nealrgross.com

1    and raise scheme?  What would there be, a

2    recommendation?

3         A    Yes.

4         Q    And what would the recommendation

5    be?  Who should get a high raise, a low raise,

6    a medium raise, no raise, that sort of thing?

7         A    Yes.

8         Q    And was it done by percentages?

9         A    I don't understand.

10        Q    Well, how did you separate the

11   groups?  Suppose you had -- everybody was

12   fabulous.    Could you give everybody the

13   highest raise?

14        A    No.

15        Q    Okay, so you had to find

16   differences even if everyone was great, right?

17        A    Yes.

18        Q    And what were the differences?

19   Let's take 2005, for 2005, how would you find

20   the differences, what would the differences

21   be?  Let's just take the bonus question.

22        A    I don't understand.

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1          Q      Some people would get a bigger

2     share than other people, correct?

3          A      Yes.

4          Q      Some people would get no share at

5     all.  Correct?

6          A      Possible.

7          Q      Okay, so how would you separate,

8     how would you -- were you given from above

9     what percentage would have to get what?

10         A      No.

11         Q      Then how would you do it?

12         A      Talked it through.

13         Q      And was there any rules, you could

14    only give the top bonus to such percentage of

15    your force or recommend the top bonus to a

16    certain percentage?

17         A      No.

18         Q      Okay.  All right, but you couldn't

19    give everybody the top bonus.

20         A      No.

21         Q      Okay, and did you have to give

22    some people no bonus?

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS              Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1          A     No.

2          Q     How did Mary do in 2005, do you

3    recall?

4          A     I believe she got a raise.

5          Q     I'm talking about the bonus now.

6          A     No bonus.

7          Q     No bonus?  Did anybody get a bonus

8    in 2005?

9          A     Yes.

10         Q     Who got a bonus?  Mr. Baker?

11               MS. SARSHIK:  I'm going to object

12    for  a  moment.   Okay,  I'll  withdraw  the

13    objection.

14               MR. SHAPIRO:  Okay.

15               BY MR. SHAPIRO:

16         Q     Did Mr Baker get a bonus in 2005?

17         A     I honestly don't recall.

18         Q     All  right.   But  somebody  got  a

19    bonus.

20         A     Yes.

21         Q     But not Mary Bass.

22         A     Yes.

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1          Q     She did get one?

2          A     No, she didn't.

3          Q     She did not.  Did you get a bonus

4     in  2005?

5          A     Yes.

6          Q     Okay, how about in 2004, did Mary

7     Bass get a bonus in 2004?

8          A     No.

9          Q     How about Mr. Baker, did he get a

10    bonus in 2004?

11               MS.  SARSHIK:   Do  you  mean  for

12    2004?

13               BY MR. SHAPIRO:

14         Q     Yes, for 2004.

15         A     I don't recall.

16         Q     How  about  a  raise  in  2005,  did

17    Mary Bass get one of those?

18         A     Clarify.

19         Q     Did  she  get  a  raise,  a  salary

20    increase?

21               MS. SARSHIK:  For 2000 --

22               BY MR. SHAPIRO:

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

66

1        Q      For her work in 2005, did she get

2    a salary increase?

3        A      Yes.

4        Q      Okay, a high salary increase?

5        A      What is high?

6        Q      Yes, you also have levels of

7    salary increase, correct?

8        A      Yes.

9        Q      How did she do relatively?

10        A      I don't recall.

11        Q      Did you get a raise in 2005?

12        A      Yes.

13        Q      Did Mr. Baker get a raise in 2005,

14    that is for 2005?

15        A      No.

16        Q      He was denied a raise.

17        A      Yes, he did.

18        Q      He did get a raise.

19        A      Yes.

20        Q      So he got a raise, Mary got a

21    raise and you got a raise for 2005.

22        A      Yes.

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

```
1          Q    All right, but Mary didn't get a

2    bonus, correct?

3          A    Yes.

4          Q    You did.

5          A    Yes.

6          Q    And you can't recall about Mr.

7    Baker.

8          A    Correct.

9          Q    Baker and Mary were your only

10   subordinate supervisors?

11         A    Yes.

12         Q    How would you do raises in -- were

13   there raises and bonuses for the non-

14   management people?

15         A    Yes.

16         Q    And how was that done?  Would you

17   get together with Mary and Harry and decide

18   what raises should be given to the people that

19   worked in your section?

20         A    No.

21         Q    How would you do it?

22         A    Group.
```

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    www.nealrgross.com

68

```
1          Q      What group?

2          A      All managers.

3          Q      So you and Mary and Harry and the

4    other managers under Ms. Steely would all get

5    together and decide on the raises for these

6    non-managerial workers?

7          A      Yes.

8          Q      Okay.  That's raises and bonuses

9    for them, same way?

10         A      No.

11         Q      Well, how would the bonuses be

12   determined then?

13         A      They were defined by the program.

14         Q      In other words, the highest

15   levels, a certain percentage of people would

16   get a higher level bonus than others?  It was

17   done by percentages?

18         A      No.

19         Q      How was it done?

20         A      The top group gets a specific

21   percentage of their salary.

22         Q      And how was the top group
```

**NEAL R. GROSS**

COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 8

1      determined, by performance appraisal?

2          A      No.

3          Q      By a special meeting between you.

4          A      Correct.

5          Q      Including   Harry   and   Mary   and

6      yourself as well as the other managers under

7      Ms. Steely?

8          A      No.

9          Q      How then?

10         A      The group made a recommendation.

11         Q      The group being who?

12         A      Those managers.

13         Q      That   I've   mentioned   made   a

14     recommendation to --

15         A      My   managers,   the   other   group's

16     managers --

17         Q      Yes.

18         A      -- made a recommendation.

19         Q      To whom?

20         A      To Ann Steely.

21         Q      So not with Ms. Steely present,

22     but the others would make a recommendation.

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

70

1          A     She was present.

2          Q     She was present.  So you'd make a

3     recommendation to Ms. Steely and she'd have

4     the final word?

5          A     Yes.

6          Q     For non-managerial staff.

7          A     For both.

8          Q     For both?  I see.  How about Mr.

9     Baker, were you friendly with him?

10         A     Professional.

11         Q     Same relationship as you had with

12    Mary Bass.

13         A     Yes.

14         Q     Okay.  And those were your only

15    two subordinates, managers, supervisors.

16         A     Managers, subordinates, yes.

17         Q     Okay.

18         A     No, no.

19         Q     You    had    another    managerial

20    subordinate?

21         A     I'm  sorry,  you  said  manager  --

22    yes.

**NEAL R. GROSS**            Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

71

1        Q    You had non-manager --

2        A    Ask the question again, please.

3        Q    Your only two supervisors who were

4  subordinate to you were Harry Baker and Mary

5  Bass.

6        A   Yes.

7        Q   But you had some people that

8  reported directly to you, not through them.

9        A   Yes.

10       Q   Who was that?

11       A   Interns and other contract

12  specialists.

13       Q   So there were some contract

14  specialists that didn't report to them, they

15  reported directly to you.

16       A   Yes.

17       Q   And who were they?

18       A   Bernie Piper, Marcelle Brown, Jim

19  Thompson.

20       Q   So you -- it sounded like you were

21  running the section, too.  What did they do?

22       A   Contract specialist work.

**NEAL R. GROSS**   Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS   Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433   WASHINGTON, D.C.  20005-3701   www.nealrgross.com

72

1      Q    I understand, but why were they

2   not reporting -- why were they not in one of

3   the units or the other?

4      A    The    reorganization    had    been

5   announced and when we brought in new staff, I

6   made the decision to have them report directly

7   to me, because ultimately that is what was

8   going to happen.

9      Q    Okay.   Now, I want to call your

10  attention to February of 2005.  And I want to

11  ask you if you recall -- well, let me ask you

12  this first, you said you looked at the 2005

13  performance appraisal yesterday.

14      A    Yes.

15      Q    Did you see any other documents

16  yesterday in preparation for this deposition?

17      A    Yes.

18      Q    What did you look at?

19      A    My copy of the complaint.

20      Q    A  copy  --  your  copy  of  what

21  complaint?

22      A    For   this   meeting,   for   this

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1    process.

2         Q    A copy of the complaint for this

3    process.   You mean a lawsuit.

4         A    The grievance --

5         Q    The grievance.

6         A    -- that I was given a copy of when

7    I gave an affidavit.

8         Q    I see, you mean the administrative

9    complaint, the administrative EEO complaint.

10        A    Yes, yes.

11        Q    Is that right?

12        A    Yes.

13        Q    Were you named as somebody who

14   discriminated or retaliated in that complaint?

15        A    No.

16        Q    But you were given a copy of the

17   complaint.

18        A    Yes.

19        Q    Okay, and you said you gave an

20   affidavit.

21        A    Yes.

22        Q    How did you come to give an

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

74

1      affidavit?

2            A    I was requested to.

3            Q    All right, but I'm asking you the

4      mechanics of it.  Did you sit down with an

5      investigator and the investigator talked to

6      you and reduced it to an affidavit and then

7      you reviewed it, made changes and signed it?

8            A    Yes.

9            Q    That's the process.

10           A    Yes.

11           Q    Okay.  And how many affidavits did

12     you give?

13           A    One.

14           Q    And did you review that yesterday,

15     the affidavit?

16           A    Yes.

17           Q    Do you have a copy of your

18     affidavit?

19           A    Would you clarify that?

20           Q    Yes, when you reviewed the

21     affidavit yesterday, did you just pull out a

22     copy that you had of it, or were you given a

**NEAL R. GROSS**                    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS              Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

1    copy of it?

2         A    I have a copy.

3         Q    You had a copy and so you looked

4    at

5    -- now, I see.  You looked at the

6    administrative complaint of discrimination,

7    the 2005 performance appraisal that you did on

8    Ms. Bass, and a copy of your affidavit,

9    correct?

10         A    Yes.

11              THE WITNESS:  Can we take a break

12    for a second?  I need to go to the bathroom?

13              MR. SHAPIRO:  Sure, but can you

14    just tell me before you go if you looked at

15    any other documents.

16              THE WITNESS:  Yes.

17              BY MR. SHAPIRO:

18         Q    What other documents?

19              MS. SARSHIK:  He asked if he could

20    have a break and you said, as soon as he

21    answers that question.

22              MR. SHAPIRO:  Yes, I know what I

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1    said.  Are you desperate to go to the bathroom

2    now?

3              THE WITNESS:  Yes.

4              MR. SHAPIRO:  Good, let's take a

5    break.

6              (Whereupon, a brief recess was

7    taken.)

8              MR. SHAPIRO:  Back on the record.

9              BY MR. SHAPIRO:

10       Q    So what other documents did you

11    look at in preparation for this deposition

12    besides --  as I was saying aside from -- in

13    addition to your affidavit, the administrative

14    complaint, and your performance appraisal of

15    Ms. Bass for 2005, what other documents did

16    you look at in preparation for this

17    deposition?

18       A    Some correspondence I had given

19    Mary in 2006.

20       Q    What correspondence?

21       A    A memo that I had given her for

22    areas of improvement.

**NEAL R. GROSS**        Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS        Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

1        Q    In 2006.

2        A    Yes.

3        Q    All right, and just that's the

4    only document that you looked at, a memo?

5        A    There was a follow-up e-mail that

6    I had sent her relating to a meeting we had,

7    relating to the March 15th memo.

8        Q    So you had the memo that you

9    talked about relating to the areas that she

10   needed improved, is that fair?

11       A    Yes.

12       Q    Was March 15th?

13       A    Yes.

14       Q    And then there was a subsequent

15   meeting about that memo?

16       A    Yes.

17       Q    And a follow-up writing that had

18   to do with that meeting.

19       A    Yes.

20       Q    Any other documents?

21       A    Other e-mails that I had saved.

22       Q    What other e-mails?

**NEAL R. GROSS**                    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS              Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

1        A      Just e-mails that I had saved?

2        Q      E-mails  about  Mary  or  to  Mary

3    between you?

4        A      Both.

5        Q      Any e-mails from Ms. Steely to you

6    about Mary?

7        A      I don't recall specifically.

8        Q      Did  you  have  any  memo  in  2005

9    about Mary needing improvement?

10       A      No.

11       Q      This was only in 2006.

12       A      Yes.

13       Q      And  she  worked  for  you  for  the

14   entirety of 2004, the entirety of 2005 and

15   then 2006 till August when she left.

16       A      Yes.

17       Q      Okay, when was the reorganization

18   announced?

19       A      I don't recall the exact date.

20       Q      Okay, some time in 2006 though.

21       A      I believe it was earlier.

22       Q      Earlier, in 2005, before 2006, the

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1    dawn of 2006?

2         A    Yes.

3         Q    Okay.

4         A    It might have been earlier than

5    that.

6         Q    When did the reorganization go

7    into effect?

8         A    The end of 2006.

9         Q    The end of 2006.  And was there --

10   was there buy-outs in connection with the pre-

11   reorganization period?

12        A    Yes.

13        Q    Was it offered to CM-1s?

14        A    Yes.

15        Q    So Mary -- it was offered to Mary

16   and Mr. Baker.

17        A    Yes.

18        Q    Was it offered to you?

19        A    Yes.

20        Q    Okay, did Mr. Baker take the buy-

21   out?

22        A    Yes.

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

80

1      Q      Did Mary take the buy-out?

2      A      No.

3      Q      When was the buy-out, in 2006?

4      A      I don't understand.

5      Q      Was the buy-out offered in 2006?

6      A      No.

7      Q      It was offered in 2005?

8      A      I don't think so.

9      Q      2004?

10     A      I don't recall the exact date.

11     Q      I'm not asking you the exact date.

12  I'm asking the year.

13     A      I believe so.

14     Q      So you think it was in 2004 that

15  the buy-out was offered.

16     A      Yes.

17     Q      Was there a buy-out in 2006 in

18  preparation -- before the reorganization went

19  into effect?

20     A      No.

21     Q      What were the areas that the memo,

22  the March 15th memo covered that Mary Bass

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

81

1    needed to show improvement?

2         A    Meeting preparation, input of

3    information into our systems, providing advice

4    to clients, and management of productivity and

5    timeliness.

6         Q    Productivity and what?

7         A    Timeliness.

8         Q    Timeliness?

9         A    Yes.

10         Q    Her personal one or of her people?

11         A    Both.

12         Q    Any areas that she didn't have to

13    show improvement?

14         A    Those were the areas in the memo.

15         Q    I'm sorry?

16         A    Those were the areas in the memo.

17         Q    Are there any other areas for a

18    manager in your unit?

19         A    I don't understand.

20         Q    Are there any other areas that

21    she's judged on in performance other than

22    meeting preparation, input into systems,

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 8

82

1    advice   to   clients   and   management   of

2    productivity and timeliness, both her own and

3    her people?

4         A    Yes.

5         Q    Or is that the summary of her job?

6         A    No, there was other things.

7         Q    So there were things that she did

8    well in, she didn't need to show improvement.

9         A    Yes.

10        Q    But these areas she needed to show

11   improvement.

12        A    Yes.

13        Q    Did she need to show improvement

14   in the years before, 2004 and 2005?

15        A    I don't understand the question.

16        Q    Was   it   indicated   in   her

17   performance appraisal for 2004 or 2005 that

18   she needed to improve in these areas?

19        A    Not  in  the  written  performance

20   appraisal but verbally I had passed some of

21   these on.

22        Q    Earlier?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 8

www.nealrgross.com

1          A      In the prior appraisal meetings.

2          Q      Yes, but you never made a record

3     of them until March of 2006.  Is that correct?

4     That's the first written record --

5          A      Right.

6          Q      -- that she needed -- Mary Bass

7     needed to show improvement in any area,

8     correct?

9          A      Written record, correct.

10         Q      Yes, that's the first written

11    record.   Ms.  Bridges  Steely  was  your

12    supervisor when you sent this memo out in

13    2006?

14         A      Yes.

15         Q      Did you discuss sending this memo

16    out with Ms. Bridges Steely before you sent it

17    out?

18         A      She was aware.

19         Q      She was aware.  Did she indicate

20    that she wanted you to send out a memo?

21         A      No.

22         Q      How was she aware?

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1          A     I told her what I was doing.

2          Q     Did you send out a memo of needs

3     improvement to Mr. Baker?

4          A     No.

5          Q     Had    you    mentioned    in    his

6     performance appraisals that he needed to show

7     improvement in certain areas?

8          A     Yes.

9          Q     In 2004?

10         A     I don't recall.

11         Q     In 2005?

12         A     Yes.    It   was   required   by   the

13    system.

14         Q     But you didn't say that about Mary

15    Bass.

16         A     Say what?

17         Q     Areas to show improvement in her

18    2005 performance appraisal?

19         A     Yes, I did.

20         Q     Well, I thought I just asked you

21    that question and you said the first time that

22    you made written record of Mary Bass needing

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 8

1    to show improvement was the --

2        A    I misunderstood the question.

3        Q    -- March 15 memorandum.

4        A    I misunderstood the question.

5        MS. SARSHIK:  Mr. Shapiro, if you

6    want the question read back, I think you'll

7    find that you were talking about did he

8    discuss something with Mr. Baker, not did he

9    make a written record.

10        MR.  SHAPIRO:   That's  not  what

11    we're talking about.

12        BY MR. SHAPIRO:

13        Q    So the first time that you make a

14    written record of Mary Bass needing to show

15    improvement in an area was in her 2005

16    performance appraisal?

17        A    Yes.

18        Q    Not in the March 15 memorandum.

19        A    Correct.

20        Q    Okay, but you didn't make

21    any such notation in her 2004 performance

22    appraisal; is that correct?

**NEAL R. GROSS**   Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS   Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433   WASHINGTON, D.C.  20005-3701   www.nealrgross.com

1          A      I don't recall exactly.

2          Q      And the 2005 performance appraisal

3    would  be  the  first  written  performance

4    appraisal that you would have given after

5    early 2005 when you gave her the 2004

6    appraisal, correct?

7          A      Can you say that again?

8          Q      The  first  written  performance

9    appraisal,  written  comment  on  Mary  Bass'

10   performance that you would have given after

11   the issuance of the 2004 appraisal, that is

12   the 2004 -- the appraisal for 2004, would have

13   been the 2005 written appraisal, correct, as

14   best as you can recall?

15         A      Yes.

16         Q      Okay,  and  these  because  the

17   appraisal period is calendar, correct --

18         A      Yes.

19         Q      -- they are given early the next

20   year, January of -- correct?

21         A      Yes, yes.

22         Q      That's typically what is done.

**NEAL R. GROSS**        Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS                Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

1         A    Yes.

2         Q    And as best as you recall, that's

3    what you did --

4         A    Yes.

5         Q    -- for 2004, 2005 and 2006,

6    correct?

7         A    Yes.

8         Q    Good.  And is there no reviewing

9    official here at the FDIC?  Typically -- I'll

10   tell you what I mean by reviewing official.

11   Typically, in the government, a performance

12   appraisal is done by the immediate supervisor

13   but the second level supervisor has to review

14   it and sign off on it.  That's not done here?

15        A    They do not need to sign off on

16   it.

17        Q    So there's no reviewing official,

18   a place for a reviewing official.

19        A    The form has one, but they do not

20   need to sign off on it.

21        Q    Well, did Ms. Bridges Steely sign

22   off on these?

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS        Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

1          A     No.

2          Q     Okay, but she was aware of what

3     you were giving your people.  You would show

4     them to her.

5          A     No.

6          Q     You didn't?  You didn't discuss

7     your subordinate supervisors' performance with

8     your boss?

9          A     Discussed.

10          Q     Yes, but you wouldn't show the

11     performance appraisal.

12          A     Correct.

13          Q     All right, I want to draw your

14     attention now to February of 2005.  By the

15     way, do you have those documents with you that

16     you reviewed?

17          A     No.

18          Q     You didn't bring them.

19          A     No.

20          Q     Okay, so the documents are -- any

21     other documents that you recall reviewing?

22          A     Some other notes and e-mails that

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1    I had.

2         Q    About what?

3         A    About Mary.

4         Q    Did anybody give you documents or

5    suggest documents for you to review?

6         A    No.

7         Q    Okay, now talking about early

8    2005, do you recall a meeting in Ms. Bridges

9    Steely's office on February 1st concerning --

10   between yourself, Mary Bass and Ms. Bridges

11   Steely?

12        A    No.

13        Q    You don't recall such a meeting.

14   Would it help if I show you your affidavit?

15        A    No.

16        Q    No, okay.  Do you recall a meeting

17   on February 3rd between you and Ms. Bridges

18   Steely and Mary, February 3rd, 2005?

19        A    Yes, around that date.

20        Q    Okay, what was the meeting about?

21        A    To talk about Mary's workload

22   status in her unit and to discuss how she

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 8

1    handled situations and complaints about some

2    of her staff members.

3         Q    Okay, who called the meeting?

4         A    I don't recall exactly.

5         Q    Well, your boss was there.

6         A    Yes.

7         Q    Correct?   And your subordinate,

8    Mary Bass, was there.

9         A    Yes.

10         Q    And it was in your boss' office,

11    correct?

12         A    Yes.

13         Q    Does it suggest that Ms. Bridges

14    Steely called the meeting?

15         A    I don't know if that suggests it

16    or not.

17         Q    Okay.   Was there a problem that

18    had arisen that this meeting was meant to

19    address?

20         A    I don't recall the specifics of

21    why the meeting was held other than what I

22    described a moment ago.

**NEAL R. GROSS**     Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS     Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433     WASHINGTON, D.C.  20005-3701     www.nealrgross.com

1    Q    That's the best you can do about

2  what this meeting was about.

3    A    It's been over two and a half

4  years.

5    Q    I understand.  I'm not asking you

6  why.  I'm just saying that's the best you can

7  recall.

8    A    Yes.

9    Q    And you have thought about it.

10    A    Yes.

11    Q    Okay.  So what were -- do you

12  recall the complaints about her staff, about

13  Mary Bass' staff from her clients?

14    A    Not specifically for that meeting.

15    Q    But that's what was -- that's part

16  what the meeting was meant to address.

17    A    Yes.

18    Q    All right, and also workload

19  issues.  What does that mean workload issues?

20  Do you recall or do you only recall it as

21  workload issues?

22    A    Just how work was going to get

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1    done.

2         Q    Okay, did you have a similar

3    meeting with Ms. Bridges Steely and Harry?

4         A    No.

5         Q    Okay.  Did anything unusual happen

6    at this meeting?

7         A    What do you mean by unusual?

8         Q    Well, was there an incident that

9    happened at the meeting that stands out in

10   your memory aside from that it was about

11   workload issues and it was about complaints or

12   how Mary Bass handled complaints by her

13   clients about her staff?

14        A    No.

15        Q    Nothing unusual happened at the

16   meeting.

17        A    Describe unusual.

18        Q    Well, what do you recall from the

19   meeting besides what you just told me about

20   workload -- that it was about workload

21   meetings

22   -- workload issues, how the work was to be

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS                Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1    done, and issues about how Mary handled

2    complaints from her clients about her staff?

3    Anything else you can recall about that

4    meeting?

5         A    I remember it was suggested that

6    Mary may take a management class.

7         Q    Who suggested that?

8         A    I don't recall.

9         Q    Okay, could it have been Mary that

10   suggested that?

11        A    It could have been anyone in the

12   room.

13        Q    Okay, anything else that you

14   recall from that meeting?

15        A    I remember Mary responding to the

16   issues I described saying that she thought

17   she'd been performing okay.

18        Q    With regard to what, distributing

19   the workload or dealing with complaints?

20        A    I don't remember specifically,

21   related to those.

22        Q    Okay, so she thought that she had

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          www.nealrgross.com

1    handled complaints well.

2        A    Yes.

3        Q    And she thought that she had

4    distributed the workload okay.

5        A    Yes.

6        Q    Okay.

7        A    And I think she was asked you

8    know, based on some of the complaints, how she

9    dealt with those.

10        Q    How she what?

11        A    How she would deal with those, how

12    she would manage her staff to resolve those

13    types of issues.

14        Q    Were they hypothetical?

15        A    No, they were specific issues.  I

16    don't remember the --

17        Q    So somebody complained to whom, to

18    you or to Bridges Steely?

19        A    I don't recall exactly.

20        Q    Do you recall any complaints about

21    Mary from her clients or about her staff

22    actually?

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1        A     Yes.

2        Q     Who on the staff was complained

3    about?

4        A     Joan Gustafson.

5        Q     Joan --

6        A     Gustafson.

7        Q     Anyone else?

8        A     Not that I recall.

9        Q     Okay.  So Mary was asked how she

10    had handled the complaints about Ms. Gustafson

11    or she was told of complaints for the first

12    time about Ms. Gustafson and asked how she was

13    going to handle them?

14        A     You asked if I knew of complaints

15    of her staff. I said Joan Gustafson.  I don't

16    recall specifically the exact complaints that

17    were discussed at the meeting.

18        Q     Okay, well, what I'm asking you

19    now is, was it that complaints were brought --

20    at this meeting, complaints were brought to

21    Mary's attention and she was asked how she

22    intended to handle the complaints or was she

**NEAL R. GROSS**                    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS              Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433      WASHINGTON, D.C.  20005-3701      www.nealrgross.com

1    asked about complaints that she already knew

2    about and she was asked how she handled them?

3         A    I don't know if she knew about

4    them or not.

5         Q    Okay, I see.  Anything else you

6    recall from the meeting besides Mary

7    responding?

8         A    What are you looking for?

9         Q    Anything you remember, that's what

10   I'm looking for, your memory of what happened

11   at this meeting.

12        A    Ms. Steely used the words that are

13   in the complaint that I received.

14        Q    What words?

15        A    Missy.

16        Q    All right, the word or the words?

17   Were there other words?

18        A    I don't --

19        Q    I'm probing your memory, sir, so

20   it's not what I know, it's what you know.

21        A    I remember the word "Missy".

22        Q    Okay, so Ms. Steely used the word

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1    "Missy"?

2         A    Yes.

3         Q    M-I-S-S-Y, Missy?

4         A    She said it, I don't know how you

5    spell it.

6         Q    I'm  just  trying  to  get  it

7    phonetically,  that's  what  you're  saying,

8    Missy?

9         A    Sounds right.

10        Q    Okay, and she used the word, how

11   did she use the word?

12        A    I don't recall exactly.

13        Q    Did she use it in reference to

14   Mary, like calling Mary Missy, "Okay, Missy",

15   in other words, talking to Mary or did she

16   just use the word in a sentence?

17        A    She was talking to Mary.

18        Q    Okay, so she used it in reference

19   to  Mary.  She  called  Mary  Missy.  She

20   referred to Mary as Missy.

21        A    She was talking to Mary, I don't

22   exactly recall.

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

98

1      Q    All right, so you don't recall the

2  context in which it was used.

3      A    No.

4      Q    Okay, but you do recall her saying

5  the words.

6      A    Yes.

7      Q    Okay, to Mary.

8      A    She was talking to Mary.

9      Q    Okay.   Do  you  recall  anything

10  else?

11      A    No.

12      Q    How  many  times  do  you  recall  Ms.

13  Bridges Steely using the word Missy?

14      A    Once.

15      Q    Just  once.   Do  you  recall  Mary

16  using the word Missy?

17      A    No.

18      Q    Do  you  recall  Mary's  reaction  to

19  the word Missy being used?

20      A    No.

21      Q    Okay.   Have  you  now  told  us

22  everything you recall about that meeting on or

**NEAL R. GROSS**   Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS   Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433   WASHINGTON, D.C.  20005-3701   www.nealrgross.com

1    about -- that occurred on or about February

2    3rd, 2005?

3        A    Yeah.

4        Q    Okay, let's take a moment and

5    think about it.  I want you to take a moment

6    and think about it.  Just make sure that

7    you've told us all that you can recall now.

8        A    That's all I recall.

9        Q    Okay.  I don't want to pressure

10    you with time now.  I want you to tell me that

11    I've given you enough time to recall whatever

12    you can recall from that meeting.  Do you

13    understand?  I don't want to be --

14        A    I answered the question.

15        Q    Okay, but I don't want it later to

16    be said that I cut you off and I didn't give

17    you enough time to think about it, so have you

18    had enough time to think about it?

19        A    Yes.

20        Q    Okay.  Good, okay, now, did Ms.

21    Bridges Steely tell you why she used the word

22    Missy, at any time?

**NEAL R. GROSS**                    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS                    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433      WASHINGTON, D.C.  20005-3701      www.nealrgross.com

1          A      Yes.

2          Q      When did she tell you?

3          A      Later that day.

4          Q      Later that same day.

5          A      Yes.

6          Q      And how did she come to tell you?

7          A      She came to see me to talk to me.

8          Q      She came to your office.

9          A      Yes.

10         Q      Okay, it was later that same day.

11   Can you recall -- the meeting that we were

12   just talking about that you told us everything

13   you can recall of, do you recall what time of

14   day that meeting was?

15         A      No.

16         Q      Okay, but it was after that, but

17   in the same workday that Ms. Bridges Steely

18   came to your office to talk to you, correct?

19         A      Yes.

20         Q      And did she come to talk to you

21   about the meeting that we have just discussed?

22         A      I don't recall specifically.

**NEAL R. GROSS**                    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS                      Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1      Q     Well, how did she come to tell you

2   about Missy, why she had used that word?

3      A     It came up in conversation.

4      Q     What was the conversation about

5   that it came up?  In other words, I'm looking

6   for the context of how that would have come

7   up.

8      A     I don't recall if we were talking

9   about other things.  I just recall why she

10   told me she used the word.

11      Q     Okay, so what did she tell you?

12      A     She was using it kind of as an

13   exercise with Mary because Mary had used

14   similar terms in discussions with other

15   people.

16      Q     Similar terms.  Had Mary used the

17   term Missy?

18      A     No.

19      Q     Had Mary ever used the term Missy

20   that you heard?

21      A     I don't recall.

22      Q     You don't recall her having done

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1    so, do you?

2         A    No.

3         Q    Okay, so when you say similar

4    terms, is that Ms. Steely saying, "I used this

5    as an exercise because Mary used similar

6    terms", or is it your saying that these terms

7    were similar?

8         A    Me.

9         Q    In other words -- you're saying it

10   was similar.

11        A    It's been a long time.

12        Q    Okay, so what similar terms did

13   you hear Mary use?

14        A    Sweetie.

15        Q    Okay, so you relates Sweetie to

16   Missy as similar terms.

17        A    I didn't say that.

18        Q    Well, who said that the terms were

19   similar, you or Ms. Bridges Steely?  When she

20   explained to you why she used -- why she had

21   used Missy --

22        A    I can't recall if exactly she used

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1    the word similar.  It was the context of

2    that's why it was done.

3         Q    All right, so it was you're using

4    the term similar but you're relating a -- the

5    message that Ms. Bridges Steely gave to you in

6    that second conversation with you, right?

7         A    Yes.

8         Q    Okay, and she said she used the

9    term Missy as an exercise because Mary -- to

10   demonstrate something to Mary, an exercise to

11   demonstrate something to Mary?

12        A    On using words.

13        Q    On using words.  I see.  And tell

14   me what you can recall Ms. Bridges Steely

15   saying by way of her explanation as to why she

16   used the term Missy to Mary Bass that morning

17   when she came later -- or that day when she

18   came later and explained it to you.

19        A    I've told you what I recall.

20        Q    All right, so let me make sure I

21   understand it and you correct me if I do not

22   have the impression that you want to leave

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1    with me, all right, and what you recall of the

2    meeting.

3            MS. SARSHIK:  I'm going to object.

4    That's suggests that Mr. Harris is responsible

5    for any impression that you have.  He can

6    speak to the words he has said.

7            MR. SHAPIRO:  It doesn't suggest

8    anything.  You're not supposed to interrupt

9    and you're making a talking objection.  Don't

10   do it again, your objection is noted.

11           BY MR. SHAPIRO:

12       Q    Now, sir, I want to make sure I

13   understand everything that Mary -- that Ann

14   Bridges Steely said to you in that second

15   conversation by way of explaining why she used

16   the term Missy to Mary earlier that day, okay?

17           If I have it wrong in any way I

18   want you to tell me, okay?  Do we understand

19   each other?

20       A    I do.

21       Q    Okay, so Ms. Bridges Steely comes

22   into your office and tells you that she used

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1    the term Missy earlier that day with Mary Bass

2    as an exercise to teach Mary Bass -- because

3    Mary Bass used similar terms and the similar

4    term would be Sweetie in her conversation.  Is

5    that right?

6          A    That's what I said.

7          Q    Okay, is there anything else that

8    you understand that Ms. Bridges Steely -- that

9    you recall Ms. Bridges Steely saying?

10         A    No.

11         Q    And you don't recall how it came

12   up.

13         A    No.

14         Q    Okay.  All right, had you been at

15   a meeting prior to this February 3rd meeting

16   between you, Bridges Steely and Mary Bass

17   where Ms. Bridges Steely used the term Missy,

18   where Mary Bass had used a similar term as you

19   characterized it, a similar term?

20         A    Yes.

21         Q    What meeting?

22         A    It was a meeting with DSC where

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 8

1    Mary used the word Sweetie.

2         Q    Okay, at the meeting --

3         A    Yes.

4         Q    -- she used the term Sweetie?

5         A    Yes.

6         Q    During the business meeting.

7         A    During the meeting.

8         Q    All right, was it during the
9    business talking about business or was it in
10   the beginning of the meeting when people were
11   just walking in and seeing each other?

12        A    I don't recall.

13        Q    And greeting each other?  Could it
14   have been during the greeting stage before the
15   meeting actually began?

16        A    I don't recall.

17        Q    Could it have been then, rather
18   than in the context of the meeting itself?

19        A    Yes.

20        Q    Okay, who did she use the term to?

21        A    Donna Gambrell.

22        Q    Donna Gambrell.  Did she use it

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1    once or more than once that you can recall?

2            A    I don't recall more than once.

3            Q    You don't recall more than once?

4            A    No.

5            Q    So you recall once.

6            A    Yes.

7            Q    Okay, and she used it in reference

8    to   Donna  Gambrell.   In  other  words,  she

9    called,  she  referred  to  Ms.  Gambrell  as

10   Sweetie?

11           A    Yes.

12           Q    In addressing her.

13           A    I  don't  recall  the  exact  words

14   that were used.

15           Q    Okay,  but  it  was  in  addressing

16   her.  In other words, she wouldn't just use

17   the  term  Sweetie  in  another  context.   She

18   called her Sweetie in addressing her.  Like I

19   call --

20           A    I  don't  recall  exactly  how  the

21   word was used.

22           Q    Okay, does Ms. Gambrell -- do Ms.

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1   Gambrell and Ms. Bass know each other?

2        A    I don't know.

3        Q    From what you observed of them at

4   that meeting, is this the first time, they

5   ever met?

6        A    I don't know.

7        Q    You don't know, okay.  Do you know

8   if they are friendly, Ms. Gambrell and Ms.

9   Bass?

10        A    No.

11        Q    You don't know the relationship

12   between them, do you?

13        A    No.

14        Q    Did you have a first name

15   relationship with Ann Bridges Steely?  Did you

16   call her Ann?

17        A    Yes.

18        Q    Okay, and what did she call you?

19        A    Tom.

20        Q    Okay, how about Mary Bass, did you

21   have a first name relationship with Mary Bass?

22        A    Yes.

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS              Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1          Q     You called her Mary, she called

2    you Tom?

3          A     Yes.

4          Q     Okay.  Did Ms. Gambrell object to

5    being called or referred to as Sweetie by Ms.

6    Bass that you heard?

7          A     I don't recall.

8          Q     You don't recall her objecting, do

9    you?

10         A     I don't recall what her response

11   was.

12         Q     Okay.  Did Ms. Bridges Steely at

13   the meeting with Ms. Bass or this later

14   meeting with you tell you that Ms. Gambrell

15   objected to being referred to as Sweetie by

16   Ms. Bass?

17         A     No.

18         Q     Ms. Bass, did she indicate at the

19   meeting the three of you were at, on or about

20   February 3rd, did she indicate that she

21   objected to being called Missy?

22         A     I don't recall.

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1        Q    Okay.  Did she later indicate that

2    she objected to Ms. Ann Bridges Steely calling

3    her or referring to her as Missy?

4             MS.  SARSHIK:   Mr.  Shapiro,  you

5    have raised your voice so that it is louder.

6    I'm going to ask that you lower it in future

7    questions.

8             MR. SHAPIRO:  Oh, don't be silly.

9    I haven't been raising my voice.  That is

10   disgraceful that you would say such a thing.

11   I'm raising my voice just to be heard.  I'm

12   not yelling.  There's no confrontation here

13   and that is a provocation.  I won't even

14   listen to it.

15            BY MR. SHAPIRO:

16       Q    Sir,  did Ms.  --  let's  read  the

17   last question back.

18            (The record was played back.)

19            BY MR. SHAPIRO:

20       Q    All  right,  did  Ms.  Bass  later

21   indicate  that  she  objected  to  Ms.  Bridges

22   Steely referring to her or calling her Missy

**NEAL R. GROSS**     Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS     Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433     WASHINGTON, D.C.  20005-3701     www.nealrgross.com

1    at that February 3rd meeting?

2              MS. SARSHIK:   Do you mean Ms.

3    Gambrell?  You said Ms. Bass.

4              BY MR. SHAPIRO:

5         Q    Did Ms. Bass indicate that she

6    objected to Ms. -- to Ms. Bridges Steely

7    calling her or referring to her as Missy?

8         A    I don't recall.

9         Q    Did Ms. Gambrell ever indicate to

10   you that she objected to Ms. Bass referring to

11   her as Sweetie?

12        A    No.

13        Q    Did anybody ever indicate to you

14   that Ms. Gambrell objected?

15        A    No.

16        Q    Did you have any other

17   conversations with Ms. Bridges Steely about

18   Missy, her use of the term Missy?

19        A    Say that again.

20        Q    Did you have any other

21   conversations with Ms. Bridges Steely about

22   the term Missy?

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1          A     Not that I recall.

2          Q     Did you have any conversations

3    with Ms. Bass about Ms. Bridges Steely using

4    the term Missy?

5          A     Yes.

6          Q     Tell me when that was.

7          A     Shortly after the meeting, Mary

8    came to my office and told me she'd be going

9    to ODEO.

10         Q     The Equal Employment Opportunity

11   Office at FDIC.

12         A     Yes.

13         Q     All right, did this meeting where

14   Ms. Bass came by your office occur before or

15   after Ms. Bridges Steely came to your office?

16         A     I don't recall exactly.

17         Q     Well, let's go through it.  There

18   was a meeting where the three of you were

19   present where Ms. Bridges Steely used the term

20   Missy referring to Ms. Bass, right?

21         A     Yes.

22         Q     Okay, now, how soon after that did

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1    the next meeting occur?

2        A    I recall Mary came to my office 30

3    minutes to an hour, within 30 minutes to an

4    hour after the meeting with Ms. Steely that we

5    were all three at.

6        Q    Right.  And she said what?

7        A    She told me she was going to ODEO

8    to, I don't know, discuss what happened in the

9    meeting.

10        Q    Discuss  what  happened  in  what

11    meeting, in the meeting that all three of you

12    were at?

13        A    Yes.

14        Q    Was she going to make a complaint?

15        A    I don't recall exactly what she

16    said.

17        Q    Okay, but did the term Missy come

18    up?

19        A    I don't recall exactly the term

20    come up, no.

21        Q    Okay, so it was later that Ms.

22    Bridges  Steely  came  to  your  office  and

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS                    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1    discussed the term Missy.

2         A    I don't recall exactly when Ms.

3    Steely came to my office.

4         Q    Well, did she come before or after

5    Mary passed through saying she was on her way

6    to ODEO?

7         A    I don't recall exactly.

8         Q    Okay.  Recall for me precisely, as

9    much as you can recall, this incident where

10   Mary 30 minutes to an hour later came to your

11   office and said she was going to ODEO.

12        A    I already told you I everything I

13   recall.

14        Q    Can't recall anything more.

15        A    I remember it was a short -- she

16   came in and told me what she said and it was

17   over.

18        Q    She told you what?

19        A    What I just told you.

20        Q    That she was going to ODEO to

21   complain about Bridges Steely's conduct at the

22   meeting that you were all at?

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1        A    I didn't say that she was going to

2    complain about the conduct.  I said she was

3    going to go over there.  She was going to

4    ODEO.  I don't recall exactly the terms or

5    words she used.

6        Q    About Bridges Steely.

7        A    About the meeting.

8        Q    About the meeting that the three

9    of you were in earlier that day.

10       A    Yes.

11       Q    Did she indicate to you that she

12   had a subsequent meeting with Bridges Steely,

13   that Bridges Steely had come down to her

14   office after the three of you were in a

15   meeting?

16       A    I don't recall.

17       Q    All right, did you know about that

18   second meeting where Bridges Steely came to

19   Mary's office?

20       A    Yes.

21       Q    When did you find that out?

22       A    I don't recall.

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1    Q    Did Bridges Steely tell you about

2    that?

3    A    I don't recall which one of them

4    told me that.

5    Q    Could it be that Mary said that

6    she was going to ODEO not just about the

7    meeting but about the subsequent meeting that

8    Bridges Steely had with her and that's when

9    you found out that Bridges Steely had gone to

10    Mary's office after the meeting that the three

11    of you were in?

12    A    I don't know but it could be.

13    Q    It also could be that Bridges

14    Steely told you about that in her meeting with

15    you later that day.

16    A    It could be.

17    Q    But you don't know what happened

18    at that meeting.  You can't recall what was

19    told to you about that meeting.

20    A    I wasn't in the meeting.

21    Q    But you can't recall what was told

22    to you about that meeting.  You only know that

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 8

1    you were told that there was a subsequent

2    meeting.

3          A    Correct.

4          Q    Did you do anything when Mary Bass

5    told you she was going to ODEO?

6          A    At some point, I informed Ms.

7    Steely as my supervisor.

8          Q    Why did you do that?

9          A    Because as my supervisor, I would

10   always tell her when there were issues like

11   that.

12         Q    Why tell her at all?

13         A    I just did.

14         Q    Did she indicate that she was

15   complaining about you?

16         A    No.

17         Q    Then why did you tell the boss

18   that EEO was being queried by Mary Bass about

19   something the boss had done?

20         A    Because that would have been my

21   practice with anybody.

22         Q    What's the practice that you

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          www.nealrgross.com

1    exactly had?

2         A    I would have told my supervisor

3    things that were happening in my section.

4         Q    I see.  And did you do that that

5    same day?

6         A    Yes.

7         Q    So is that when Bridges Steely

8    told you about why she used the term Missy?

9         A    I don't recall.

10         Q    So it might have been a separate

11    meeting.

12         A    It might have been.

13         Q    Okay.  I want you to give me a

14    sense of where these things were.  We know

15    that the meeting that all three of you were in

16    that day, the first meeting, was in Ms.

17    Bridges Steely's office, correct?

18         A    Uh-huh.

19         Q    Is that a yes?

20         A    Yes.

21         Q    Okay, we know that Mary Bass, when

22    she was going to ODEO, she stopped by your

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1    office, correct?

2         A    Yes.

3         Q    And you said before that Ms.

4    Bridges Steely came by your office and said in

5    the context we don't know but she did say why

6    she had used the term Missy.

7         A    Yes.

8         Q    And that was in your office also.

9         A    Yes.

10        Q    So when you told Ms. Bridges

11   Steely about Mary Bass going off to ODEO,

12   where did that happen?

13        A    I don't recall.

14        Q    Did you make an effort to go to

15   see Ms. Bridges Steely?

16        A    I don't recall.

17        Q    Could you have told Ms. Bridges

18   Steely that when she came to tell you about --

19   in the same conversation when she told you

20   about how she had come or why she'd come to

21   use the term Missy?

22        A    It's possible.

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1          Q    Had you ever heard Ms. Bass use

2      the term Sweetie or a similar term towards

3      anyone else other than that one time that she

4      used it with Ms. Gambrell?

5          A    She used a similar term with me

6      once.

7          Q    What did she say?

8          A    I don't remember the exact

9      conversation but she used the word Sweetie.

10         Q    And you objected to it?

11         A    I didn't say anything.

12         Q    She only used it once.

13         A    Yes.

14         Q    Did you ever tell her that you

15     didn't think it was appropriate?

16         A    No, she apologized as soon as she

17     said it.

18         Q    And was that before or after the -

19     -

20         A    I don't recall.

21         Q    -- Missy conversation?

22         A    I don't recall.

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1        Q    Were you offended by it?

2        A    No, because she apologized.

3        Q    I see, but you were offended if

4    she didn't apologize.  You would have been

5    offended.

6        A    I can't speculate on that.

7        Q    I see.  The complaints that Ms.

8    Bridges Steely brought up that clients had

9    made about Ms. Bass' subordinates, which

10   clients made the complaints?

11       A    I don't recall specifically.

12       Q    Was it DSC?

13       A    I don't recall.

14       Q    Ms. Gambrell, she's African

15   American?

16       A    Yes.

17       Q    Did anyone ever tell you that Ms.

18   Bass had used Sweetie or similar terms?

19       A    Yes.

20       Q    Who?

21       A    Ann Steely.

22       Q    That was the Gambrell case,

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1    correct?

2         A    No.

3         Q    She told you she heard her use it

4    other times.

5         A    Yes.

6         Q    Anyone else, any other colleagues

7    tell you that?

8         A    Yes.

9         Q    Who?

10        A    Nancy Krauss.

11        Q    Nancy Krauss.  And Ms. Krauss told

12   you that when, before or after this Missy

13   conversation?

14        A    I don't recall.

15        Q    Ms. Krauss is White or Black?

16        A    White.

17        Q    Ms. Bridges Steely is White?

18        A    Yes.

19        Q    Anyone else complain to you or say

20   to you or indicate to you that they had

21   overheard Ms. Bass use the term Sweetie or

22   similar terms.

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1          A      Not that I recall.

2          Q      So  Ms.  Bridges  Steely  and  Ms.

3    Krauss are the only ones.

4          A      Those  are  the  ones  I  remember.

5    There could have been others.

6          Q      Well,  I  understand  there  could

7    have been but I'm asking you if you can recall

8    any and you said you can't recall any others;

9    is that correct?

10         A      Correct.

11         Q      Okay,  who  is  Ms.  Krauss,  where

12    does she work?

13         A      I don't know where she works now.

14         Q      No, when she was your colleague.

15         A      She worked for me.

16         Q      She worked for you.

17         A      Or she worked -- she worked for me

18    at times.  I don't recall exactly where she

19    worked when we had that conversation.

20         Q      How did she come to tell you about

21    that?  Were you inquiring?

22         A      We were just talking.

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

124

1        Q     Uh-huh, was it before or after the

2    Missy conversation?

3        A     I don't recall.

4        Q     Uh-huh.   Did she give you an

5    opinion about what she thought of Ms. Bass

6    using that term?

7        A     Yes.

8        Q     What did she say?

9        A     Something to the effect, she

10   didn't appreciate it.

11       Q     Uh-huh.   Now, did you ever have

12   any other discussion with Ms. Bridges Steely

13   about this Missy, her use of the term Missy?

14       A     Yes.

15       Q     When?

16       A     I don't recall the exact date.

17       Q     Before or after the discussion

18   when she came to your office?

19       A     After.

20       Q     How long after, the same day?

21       A     I don't recall.

22       Q     So it could have been the same

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1    day.

2         A    Yes.

3         Q    Okay,    tell    me    about    that

4    discussion.

5         A    More just logistical discussions.

6         Q    More logistical.

7         A    About  the  process,  the  complaint

8    that Mary had ultimately filed.

9         Q    So did she discuss her use of the

10   term Missy?

11        A    No,  we  didn't  discuss  the  facts

12   any more.  It was just the logistical process

13   of --

14        Q    So she never again discussed her

15   use of the term Missy with Mary other than

16   that one time on the same day when she came to

17   your office.

18        A    Not that I recall.

19        Q    We're    talking    about    Bridges

20   Steely.

21        A    Not that I recall.

22        Q    Okay.  Did anyone else discuss Ms.

**NEAL R. GROSS**     Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS     Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433     WASHINGTON, D.C.  20005-3701     www.nealrgross.com

1    Bridges Steely's use of the term Missy with

2    Mary?  In other words, did anyone else discuss

3    with you Ms. Bridges Steely's use of the term

4    Missy with Mary?

5          A    Yes.

6          Q    Who?

7          A    The individual I gave the

8    affidavit to.

9          Q    The EEO investigator.

10         A    Yes.

11         Q    Anyone else?

12         A    Not that I recall.

13         Q    So from February 3rd or thereabouts

14   until today, you discussed Ms. Bridges

15   Steely's use of the term Missy with Ms.

16   Bridges Steely the day of, right, the day that

17   it happened when she came to your office later

18   that day, correct?

19         A    Yes.

20         Q    The EEO investigator, when he or

21   she talked to you about the -- giving the

22   affidavit and took the affidavit from you,

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1    took the information, correct?

2          A    Yes.

3          Q    And no one else.

4          A    Not that I recall.

5          Q    Now, you knew about Ms. Bass'

6    prior EEO activity, her case, didn't you?

7          A    I was aware of it.

8          Q    You were aware of it at the time

9    of Ms. -- that Ms. Bridges Steely used the

10   term Missy, correct?

11         A    Yes.

12         Q    Okay, and how did you come to be

13   aware of it?

14         A    Just heard about it.

15         Q    It was notorious in FDIC?

16         A    I don't know what you mean by

17   notorious.

18         Q    People talked about it, people

19   heard about it.  People knew about it.

20         A    Yes.

21         Q    And when had you heard about it?

22   Can you tell us?  How much before the Missy.

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1    If we can just take the Missy date because we

2    know when it is.  It's on or about February

3    3rd, 2005.  How much before that did you know

4    about Mary Bass' prior EEO activity, her case,

5    her lawsuit?

6         A    Some time before that, well before

7    that.

8         Q    Well?  A year before that?

9         A    Yes.

10        Q    Two years before that?

11        A    Yes.

12        Q    Three years before that?

13        A    I don't remember exactly the date.

14        Q    Okay.  People did discuss Mary's

15   case?

16        A    What do you mean by discuss?

17        Q    That Mary had the case, that she

18   had won her case, that there was a verdict in

19   her case.

20        A    I had heard discussions in that

21   context, yes.

22        Q    That Mary got a promotion because

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1    of her case?

2         A    I'm not exactly sure of the exact

3    settlement of her case, but I heard rumors and

4    speculation.

5         Q    Settlement or resolution?

6         A    Whatever the term is.

7         Q    Okay but you had heard rumors and

8    speculation.

9         A    Just from other staff members.

10        Q    Right.   It was something that

11   people discussed.

12        A    Yes.

13        Q    Where was Bridges Steely from?

14   When she first came as your supervisor, where

15   did she come from?

16        A    What do you mean?

17        Q    Well, what job did she come from?

18        A    She came from the Defense Threat

19   Reduction Agency.

20        Q    The --

21        A    Defense Threat Reduction Agency.

22        Q    Where is she from, geographically?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 8
www.nealrgross.com

1    Is she a New Englander, California, where is

2    she from?

3         A    I know she's lived in several

4    places.

5         Q    Where?

6         A    She's lived in Alabama.

7         Q    Is she from Alabama?

8         A    I don't know exactly what you mean

9    from Alabama.

10        Q    Well, does she speak with a

11   southern accent?

12        A    She may have.  I don't know if

13   that means she's from Alabama.

14        Q    Okay.  Where else did she live?

15        A    San Antonio.

16        Q    Texas.

17        A    Yes.

18        Q    Anywhere else?

19        A    I don't know.

20        Q    Did she ever tell you where she

21   was raised?  Did you ever have conversations

22   with her?  People will have conversations,

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433      WASHINGTON, D.C.  20005-3701      www.nealrgross.com

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 8

1      "When I was a girl".

2          A    Yes.

3          Q    Where did she say she was raised?

4          A    At least some time in Alabama.

5          Q    And how old of a woman is Ms.

6    Bridges Steely?

7          A    I don't know her exact age.

8          Q    I'm not asking you her exact age.

9    How old are you?

10         A    Forty-three.

11         Q    Is Ms. Bridges Steely older than

12   you would you say?

13         A    Yes.

14         Q    Ten years older than you?

15         A    I'm not sure.

16         Q    Could be?

17         A    Could be what?

18         Q    Could be 10 years older than you?

19         A    Could be.

20         Q    Did she retire from the FDIC?

21         A    Yes.

22         Q    And was she as CSRS employee or a

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 8
www.nealrgross.com

1    FRS employee, do you know?

2         A    CSRS, I believe.

3         Q    CSRS.  Did you discuss this case

4    with anybody, the use of the term Sweetie by

5    Ms. Bass or the use of the term Missy by Ms.

6    Bridges Steely with anybody else besides the

7    EEO investigator and Ms. Bridges Steely?

8         A    No.

9         Q    Okay.  Who else was at that

10   meeting when you heard Ms. Bass refer or call

11   Ms. Donna Gambrell Sweetie?  Who else was

12   there?

13        A    Ann Steely.

14        Q    Anyone else?

15        A    There was other management

16   officials from DSC.

17        Q    Ms. Sandra Thompson?

18        A    Yes.

19        Q    How about Michael Zamorsky?

20        A    Yes.

21        Q    Now you told me -- do you recall

22   anybody else being present?

**NEAL R. GROSS**                    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS              Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

1        A    No.

2        Q    You told me that you weren't sure

3   whether she used this as a greeting to Ms.

4   Gambrell when she first saw her -- in other

5   words, coming into the room, or during the

6   meeting.  You can't recall.

7        A    Correct.

8        Q    Okay.    Is    there    something

9   inherently wrong with calling somebody Sweetie

10  if the person doesn't object?

11       A    I don't know, it depends on the

12  person.

13       Q    Right, it depends on the person,

14  correct?

15       A    Yeah.

16       Q    And it might also depend on the

17  context, correct?

18       A    I guess.

19       Q    How long did you work for Ms.

20  Bridges Steely?

21       A    Three and a half years or so.

22       Q    She's gone now.

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1        A    Yes.

2        Q    When did she leave?

3        A    January 2007.

4        Q    Okay.  And how did she come to

5   leave?

6        A    She retired.

7        Q    What did you hear?  Was she pushed

8   out?  Is that the rumor?  Is that the talk?

9   Did somebody say -- was it ever suggested to

10  you that she was asked to depart?

11       A    No.

12       Q    You thought it was completely --

13  you understood it to be a completely

14  volitional act.

15       A    Volitional meaning her decision?

16       Q    Voluntary.

17       A    Yes.

18       Q    And there was no pressure on her

19  to leave.

20       A    Not that I'm aware of.

21       Q    Okay, were there any complaints

22  about her conduct by staff, by subordinates

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1    other than Ms. Bass?  Any EEO complaints filed

2    about her?

3         A    Not that I'm aware of.

4         Q    Any grievances filed?

5         A    Not that I'm aware of.

6         Q    Okay.  Was she well-liked by the

7    subordinates?

8         A    I can't speak for other people.

9         Q    How about you?

10        A    I liked her.

11        Q    Uh-huh.  Now, at the RTC you refer

12   to Ms. Bass as a colleague.  She wasn't a

13   subordinate of yours at the RTC right?

14        A    I did not supervise her.

15        Q    Right, that's what I mean.  She

16   was a colleague.

17        A    Yes.

18        Q    But not in your unit, in your

19   specific unit, correct?

20        A    Correct.

21        Q    But you were both in acquisition

22   management, that is contracting, government

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 8

1    contracting.

2        A    Yes.

3        Q    In RTC.

4        A    Yes.

5        Q    How  large  was  the  contracting

6    group at RTC, how many people?

7        A    It varied over time.

8        Q    Well, it varied from to?

9        A    I don't recall.

10       Q    A large group of people?

11       A    I don't know what the definition

12   of large is.

13       Q    Fifty people?

14       A    I don't know.

15       Q    You didn't serve in her section or

16   branch, right?

17       A    Not that I recall.

18       Q    Okay.  Do you recall Ms. Bridges

19   Steely at the meeting where Ms. Bass, either

20   before  the  meeting  started  or  during  the

21   meeting, referred to Ms. Gambrell as Sweetie

22   or  called  her  Sweetie,  do  you  recall  Ms.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

Bass v. Bair, No. 1:06-cv-01345-GK
Exhibit 8

1     Bridges Steely making any comment to Ms. Bass

2     about that at that time?

3          A     Can you say that again?

4          Q     Relating to the meeting where Ms.

5     Gambrell was called or referred to by Ms. Bass

6     as Sweetie, either before the meeting or at

7     the meeting, that incident, all right, do you

8     recall whether Ms. Bridges Steely who you said

9     was there, and heard the use of the term

10    Sweetie, do you recall of her commenting at

11    that time?

12         A     Yes.

13         Q     To whom did she comment?

14         A     To Mary and I was present.

15         Q     So you were present and she said

16    to Mary, what did she say?

17         A     That she did not believe she

18    should use those terms.

19         Q     Those terms or that term?

20         A     That term in speaking with others

21    and senior and management officials at FDIC.

22         Q     Did she instruct her not to or did

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1    she just opine?

2         A    I don't recall specifically.

3         Q    Do you recall talking to Ms. Bass

4    again, after she came by your office and said

5    she was going off to ODEO to talk to them

6    about Ms. Bridges Steely?  Did you ever talk

7    to Ms. Bass again about her complaints about

8    Ms. Bridges Steely or the Missy, the use of

9    the term Missy by Ms. Bridges Steely?  Did you

10   ever talk to her again about that -- those

11   things?

12        A    About the complaint, yes.

13        Q    What did you -- tell me about

14   those conversations.

15        A    She would tell me when she was

16   taking leave in accordance with the rules of

17   whatever the program was.

18        Q    So she would inform you that she

19   was taking leave to work on her EEO case.

20        A    Yes.

21        Q    Okay, any other conversations that

22   you had related to her case, her complaint,

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

139

1    her view of Ms. Bridges Steely using the term

2    Missy, her relationship or treatment by Ms.

3    Bridges Steely, anything like that?

4         A    She told me a few things about the

5    case.

6         Q    For example, what did she say?

7    Tell me what she said.

8         A    She told me that she was looking

9    for retirement.

10         Q    She was looking for retirement.

11    Okay, tell me what she said specifically.

12         A    As a settlement of the case, that

13    she was amending -- looking to amend her

14    previous settlement or whatever it was.

15         Q    Amend her previous -- you mean the

16    earlier case.

17         A    Yes.

18         Q    She was looking to amend the

19    settlement of the earlier case.

20         A    Yes.

21         Q    How?

22         A    I don't know the process.

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1          Q     No, how -- what was she looking to

2    amend it with?

3          A     To get retirement benefits.

4          Q     To   get   retirement   benefits.

5    Doesn't  she  get  retirement  benefits  as  a

6    Federal employee?

7          A     She does.

8          Q     So what was she looking for?  Did

9    she explain that?

10         A     Earlier retirement.

11         Q     Earlier retirement.  Anything else

12   that she said to you at any time subsequent to

13   saying, "I'm going off to ODEO about Ms.

14   Bridges Steely"?

15         A     She brought that up again later,

16   the same retirement discussion.

17         Q     Tell me the retirement discussion.

18         A     The same type thing.

19         Q     Tell me what she said.  Give me

20   your best --

21         A     I already told you what she said.

22         Q     She said, "I'm looking to amend

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1    the settlement of my -- the settlement of my

2    earlier  case  to  get  retirement  benefits,

3    earlier retirement".

4         A    Yes.

5         Q    Anything else?  I want you to tell

6    me everything that she said as best as you can

7    recall it.

8         A    That's what I recall.

9         Q    Anything else?  So there were two

10   other  conversations  where  she  mentioned

11   amending her earlier EEO settlement, the one

12   before the Missy thing to add early retirement

13   benefits.

14        A    Yes.

15        Q    Or earlier retirement benefits.

16        A    Yes.

17        Q    Okay, anything else?

18        A    Related to --

19        Q    Related  to  her  complaint,  about

20   Bridges Steely, Bridges Steely's use of the

21   term Missy, anything at all.

22        A    Not that I recall.

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    www.nealrgross.com

1        Q    Not that you recall?

2        A    No.

3        Q    I want you to think about it now

4    and I don't want -- I don't want to interfere

5    with your thought about it.  So if you haven't

6    had enough time to think about it, let's take

7    a few moments to think about it.

8        A    I don't need it.  I don't recall

9    or don't recall anything else.

10        Q    And you've had enough time to

11    think about it?

12        A    Yes, I have.

13            MR. SHAPIRO:  Let's go off the

14    record for a second.

15            (Off the record.)

16            BY MR. SHAPIRO:

17        Q    So did you discuss your testimony

18    here with anyone, your preparation for

19    testifying?  Did you meet with anyone, talk to

20    anyone at all?

21        A    Yes.

22        Q    Who?

**NEAL R. GROSS**                    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS              Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com

```
1          A     I met with my attorney.

2          Q     Okay.  Just Ms. Sarshik?

3          A     Yes.

4          Q     Or Mr. Jones as well?

5          A     Just her.

6          Q     And when did you do that?

7          A     Thursday, Wednesday last week.

8          Q     And for how long?

9          A     Hour, hour and a half.

10         Q     What was discussed?

11               MS. SARSHIK:  I'm going to object,

12    privileged and I'm going to instruct my client

13    not to answer.

14               MR. SHAPIRO:  Well, hang on, wait

15    a second.  Why is it privileged, he's not the

16    ADO.  He's not the management official who's

17    involved.  He's just a witness.

18               MS.    SARSHIK:    He    is    a

19    representative   of   the   Federal   Deposit

20    Insurance Corporation.  I am instructing him

21    not to answer.

22               MR.   SHAPIRO:    Why   is   he   a
```

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1    representative?  Nothing he did is at issue

2    here.  He's simple a witness to events.  Just

3    because he's employed by the Federal Deposit

4    Insurance Corporation doesn't make him within

5    the confines of the decision making group here

6    for the purposes of this case?

7                    MS.  SARSHIK:    Mr.  Harris,  I'm

8    instructing you not to answer the question.

9                    MR. SHAPIRO:  Well, wait a second,

10    wait a second.  We should probe this a little.

11    You say he's your client?

12                    MS.  SARSHIK:    Mr.  Shapiro,  I'm

13    instructing him --

14                    MR. SHAPIRO:  Wait a minute, I'm

15    entitled to -- I'm entitled to probe this and

16    you know I am.  So I'm going to probe it.  Is

17    he your client?  Is that what you're saying?

18                    MS.  SARSHIK:   The Federal Deposit

19    Insurance Corporation is my client.

20                    MR. SHAPIRO:  Yes, Mary Bass is an

21    employee and a supervisor at the Federal --

22    that doesn't make her your -- doesn't make her

**NEAL R. GROSS**      Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS      Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433      WASHINGTON, D.C.  20005-3701      www.nealrgross.com

1    your client in this case.  The context of this

2    case is he's just a fact witness.  He saw, he

3    heard, he reports.  His decisions are not at

4    issue here.  So why is he a client?  He's just

5    a fact witness. I mean, nobody would ever be

6    able to probe anything in an employment case,

7    any kind of employment case if the corporation

8    or the employing authority got to claim every

9    witness who was employed there as a client.

10   So the question is really whether he's in the

11   decision making orb for the purpose of this

12   case and I urge you to consider this because

13   he's just a fact witness.  He saw, he heard,

14   he observed, he was at a meeting.  He heard

15   this one say that, that one said this to him.

16   So it's not really a decision making person

17   here.

18            MS. SARSHIK:  Mr. Shapiro, if you

19   want to take this to the Judge, you can.  I am

20   instructing my client not to answer on the

21   grounds of attorney/client privilege.

22            MR.  SHAPIRO:   Well,  that's  the

**NEAL R. GROSS**    Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    www.nealrgross.com

```
 1   question.  The question is, is he the client,

 2   that's the question.  I mean, is she your

 3   lawyer, sir?

 4              MS. SARSHIK:  I am saying that he

 5   is a representative of our client.  He is a

 6   senior management official involved in this

 7   case and he is a client of --

 8              MR. SHAPIRO:  But he's just -- but

 9   if he saw a truck from the FDIC roll over

10   somebody in the parking lot, and I asked him,

11   did you discuss what you saw, you wouldn't say

12   he was a management official for that purpose,

13   would you?

14              MS. SARSHIK:  Mr. Shapiro, if you

15   want to take this to the Judge, you can.  I'm

16   instructing him --

17              MR. SHAPIRO:  I'm trying to talk

18   you out of it because it's wrong.  I'm

19   entitled to try to do that.  Now, will you

20   reconsider this?  I'm trying to get a sense of

21   why it is that you think that he's a

22   management official.
```

**NEAL R. GROSS**     Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS     Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433     WASHINGTON, D.C.  20005-3701     www.nealrgross.com

1              MS. SARSHIK:  I'd like to take a

2      break for a moment.

3              MR. SHAPIRO:  Sure.

4              (Off the record.)

5              MS. SARSHIK:  Are you going to ask

6      a question or do you want me to answer the

7      question that you previously asked?

8              MR. SHAPIRO:  I want to know about

9      the discussions but if -- I mean, that's the

10     question, that's the substantive question I'm

11     going to ask, but I really want to ask if he's

12     your client.

13             MS. SARSHIK:  For purposes of this

14     deposition today, he is my client or he is a

15     management representative of my client and I

16     am instructing him not to answer privileged

17     questions about his conversations with me.

18             MR.    SHAPIRO:     Well,   the

19     relationship is not just for the purposes of

20     this deposition, for the purpose of this case

21     is what you're saying, right?

22             MS. SARSHIK:  Yes.

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS                    Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1          MR. SHAPIRO:  Okay.  I don't have

2     anything further.

3          MS.  SARSHIK:    Okay,  I  have

4     nothing.  Let me take a break to consider

5     that.

6          MR. SHAPIRO:  Okay.

7          (Off the record.)

8          MR. SHAPIRO:  I guess you want to

9     ask him if he wants to waive.  Mr. Court

10    Reporter, that's your duty and I'll leave you

11    to it.

12         (Whereupon,  the  above-entitled

13    matter was concluded at 5:47 p.m. SIGNATURE

14    WAS NOT WAIVED.)

15

16

17

18

19

20

21

22

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

## CERTIFICATE

This is to certify that the foregoing transcript in the matter of:

Deposition of Thomas Dunn Harris

Date:              Wednesday, May 30, 2007

Place:             Arlington, VA

represents the full and complete proceedings of the aforementioned matter, as reported and reduced to typewriting.

_____

Neal Gross

**NEAL R. GROSS**          Bass v. Bair, No. 1:06-cv-01345-GK
COURT REPORTERS AND TRANSCRIBERS          Exhibit 8
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com